## Spring City Gas Light Co. *v.* Pennsylvania Schuylkill Valley R. R. Co., Appellant.

[Marked to be reported.]

*Railroads—Eminent domain—Damages.*

If a railroad company condemns an entire lot of land, the value of the lot at the time of taking determines the amount of the damages. If part only is taken the jury should ascertain the value of what remains, and the difference between this and the value of the whole before the entry was made, fixes the measure of damages.

In a proceeding to recover damages for an injury to a lot upon which gas works were erected, in the borough of Royersford with the pipes extending through the borough of Spring City, where it appears that only a small part of the lot was taken, and that the gas works themselves were not taken, injured or destroyed, it is error for the court to charge, without qualification, that "in ascertaining the market value of the property in question, if the jury find that its highest available use at the time of the taking was that of a gas plant, they have a right to consider the future growth of the borough of Spring City and Royersford, the increased demand for gas, as far as these considerations affect its market value; and if the jury further find that, by reason of the location of the railroad through the property, its availability has been curtailed, lessened or partly destroyed, they have the right to consider these questions as far as they affect the market value of the property as a whole immediately after the taking."

If the piece of ground taken, be treated as part of the gas plant, and its value fixed upon that basis, evidence of the amount of the capital stock, and of the net earnings of the company which owned the plant, is admissible to show the value of the whole plant before the entry, and immediately afterwards.

*Damages—Expert—Evidence.*

Where a portion of a lot which is occupied by a gas works is taken by a railroad company, and it appears that no injury was done to the gas plant itself, an expert in gas manufacturing who has no knowledge of real estate values, is an incompetent witness as to the land actually taken.

In such a case the plaintiff cannot treat the unoccupied land which was taken, as part of its gas plant, and assess the damages sustained, upon the theory that the value of its plant had been impaired.

It is immaterial that the future growth of the boroughs may possibly make the land necessary for the extension of the gas plant. It is the present, not the possible future situation that the jury must consider.

Argued Feb. 5, 1895. Appeal, No. 63, July T., 1894, by defendant, from judgment of C. P. Montgomery Co., Oct. T.,

1892, No. 31, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ. Reversed.

Appeal from report of viewers. Before WEAND, J.

At the trial it appeared that the plaintiff was the owner of a lot of ground in Royersford, upon which was erected a gas plant, with pipes extending into the borough of Spring City, on the opposite side of the Schuylkill river. The two boroughs are connected by a bridge, and have together a population of about four thousand. Defendant company located a branch railroad from its main line, and appropriated a piece of plaintiff's land, which was not used for the gas works. The works themselves were not injured.

When William Rennyson, a witness for plaintiff, was on the stand, he testified, under cross-examination, as follows:

"The Spring City Gas Light Company is a corporation; James H. Egolf is the president and I am the secretary and treasurer.

"Q. What is the capital of the company? A. $25,000."

Objected to by plaintiff as immaterial and moved to strike out the testimony.

Defendant objected to the same being struck out.

The Court. Objection overruled, and exception by defendant. Bill sealed. [2]

John Slingluff, a witness for plaintiff, testified as follows:

"I know the property of Spring City Gas Company. I am pretty well acquainted with the gas plants, and have paid considerable attention to them. I was on the property at the time the gas works were first started. I don't known how many years ago that was. Quite a good many years. I have known it there, and I have seen it in passing often. I have been on the property two or three times, probably three or four times. I think only once actually on before the Railroad came there. *I was not acquainted with its market value.* I wouldn't buy it except for the purpose of a gas works. I don't know anything about the value of other properties up there. I think I am able from my knowledge in that line of property and my acquaintance with this property with the plant on it before the railroad to tell the fair market value. I think it is very probable it might be used for other purposes. I do not know the

value of properties at Royersford.   I should think it would be good for other purposes.   I do not think I am able to express an opinion as to its market value for other purposes.   My judgment as to its value is alone for the purpose of gas works. If I was going to purchase I think I would get all the information I could.   That would have a great deal of weight with me, if there was anything in it from the past records.   I am not acquainted with the market value of real estate generally in this locality, or of the improvements."

The court refused to strike out the above testimony. [4]

Plaintiff presented the following point:

"In ascertaining the market value of the property in question, if the jury find that its highest and most available use at the time of the taking was that of a gas plant, they have a right to consider the future growth of the borough of Spring City and Royersford, the increased demand for gas so far as those considerations affect its market value, and if the jury further find that by reason of the location of the railroad through the property its availability has been curtailed, lessened or partly destroyed, they have the right to consider these questions so far as they affected the market value of the property as a whole immediately after the taking.   *Answer :* Affirmed." [1]

Verdict and judgment for plaintiff for $10,000.   Defendant appealed.

*Errors assigned* among others were (1), instruction as above, quoting (2, 3) rulings on evidence, quoting the bill of exceptions.

*Charles H. Stinson, Henry Stinson and William F. Solly* with him, for appellant.—The court in affirming plaintiffs' point to be the law implied that the speculative feature of the testimony could be considered without limit.

The testimony of experts is not equal in value to that of witnesses who have actual knowledge.   Dawson v. Pittsburg, 159 Pa. 317.

The witness Slingluff, having no knowledge of real estate values, was incompetent.

*N. H. Larzelere, E. L. Hallman and Wm. Rennyson* with him,

for appellee.—Owing to the peculiar character of the property taken and injured, the best kind of witnesses to go before the jury were witnesses who knew the value of gas plants; and the elements to be considered in their valuation, etc.

Slingluff was a competent witness because he had expert knowledge of this plant and of the value of gas plants. Dawson v. Pittsburg, 159 Pa. 317.

Market value of land is its value for any use for which it may be adapted; and the jury were bound to take into consideration the purpose for which the land was used, its adaptability for future uses, and the probable necessity for additional gas holders consequent upon future demand by reason of increase of population, etc: Baird v. R. R., 154 Pa. 459.

Ordinary witnesses are not supposed to know what enters into consideration in determining the value of a property like this, and therefore expert testimony becomes necessary: Beck v. R. R., 148 Pa. 271; Dawson v. Pittsburg, 159 Pa. 317; Harris v. R. R., 141 Pa. 242.

OPINION BY MR. JUSTICE WILLIAMS, March 18, 1895:

The general principles relating to the exercise of eminent domain, and compensation to be made to those against whom it is directed, are very familiar though they seem at times to be forgotten. The power to take is a prerogative of the government. It is to be exercised only in the interest of the public. It may be granted to municipal and other corporations to promote such municipal improvements, and such business enterprises as are calculated to advance the general welfare. Private interests must give way when the public good requires it, and the power by which this is compelled is that of eminent domain. Its exercise may sometimes involve inconvenience or positive hardship to the private citizen; but it is the state or its grantee, that enters and for a purpose that the government has deemed of sufficient general importance to make such entry justifiable. But the state or its grantee must make "just compensation" for the property taken or destroyed. What is a just compensation in any given case may be said to be a mixed question of law and fact. The law provides a general formula. The jury applies this formula to the facts in each particular case. The just compensation is such a sum as shall equal the

difference between the fair market value of the property entered
before the entry and after it.    What that sum is must be deter-
mined by the jury from evidence relating to that subject.    If an
entire lot is taken its value, at the time of taking, determines
the amount of the damages.    If part only is taken the jury
should ascertain the value of what remains and the difference
between this and the value of the whole before the entry was
made fixes the measure of damages.    That difference is a
"just compensation" to the individual for what has been taken
from him for the use or benefit of the public.    This rule is
easy of statement, and it is within the easy comprehension of
laymen who serve as jurors.    It has been laid down in a multi-
tude of cases' and is settled as well as repeated decisions can
settle any legal principle.

The first assignment of error complains that this rule was
disregarded by the court below in the affirmance of the plain-
tiff's first point.    This point asked an instruction to the jury
that "in ascertaining the market value of the property in ques-
tion if the jury find that its highest available use at the time
of the taking was that of gas plant, they have a right to con-
sider the future growth of the borough of Spring City and
Royersford, the increased demand for gas, as far as these con-
siderations affect its market value; and if the jury further find
that by reason of the location of the railroad through the prop-
erty its availability has been curtailed, lessened or partly
destroyed, they have the right to consider these questions as
far as they affect the market value of the property as a whole
immediately after the taking."    The affirmance of this point
without qualification opened the door to conjecture upon sub-
jects incapable of present ascertainment, and was calculated to
confuse rather than aid the jury.    It permitted them to con-
jecture the "future growth" of Spring City and Royersford
without limit as to the distance to which their conjectures
might extend.    It then permitted them to conjecture an in-
creased demand for gas to light the cities they had imagined
to exist in "the future;" a demand so greatly increased that
the company could not supply it with its present facilities, and
such additional ones as the remainder of the land would enable
it to provide; and that the company might then suffer loss
on account of its inability to meet such increased demand.

They were invited to make use of the results of their conjectures to fix the market value of the land taken. No more speculative and imaginary considerations affecting the value of the land taken could have been thrown into the jury box. The damages should have been ascertained by fixing the fair market value of the plaintiff's land before the taking and its value immediately after the taking. The difference would have represented the actual loss, and therefore the "just compensation" necessary to make the plaintiff whole. The third assignment of error must also be sustained. The plaintiff sought to treat this unoccupied land as part of its gas plant and assess the damages sustained upon the theory that the value of its plant had been impaired. No part of its actual plant was taken, injured or destroyed. Its operations were not interfered with in the slightest degree, yet it was claimed, and testimony was given tending to show, that the gas plant had suffered in damages to the extent of twenty-five thousand dollars. What had actually taken place was the appropriation by the defendant of a quarter of an acre of ground which the gas company had never occupied except by including it within its general inclosure. If this piece of ground was to be treated as a part of the gas plant and its value fixed upon that basis, it is too clear to admit of argument that the value of the plant as a whole before the entry was made upon it was not only a proper but a necessary subject of investigation. What was the plant worth before the entry and what was it worth immediately after were the questions the jury had, upon that theory, to determine; and the difference between these values would represent the loss sustained. The amount of the capital stock was some evidence upon the subject of actual value and it was competent therefore to place this before the jury. The same thing is true of its net earnings. If its entire capital stock had been but twenty-five or thirty thousand dollars and it had paid but little or nothing in the way of profits to the holders, the absurdity of the demand for $25,000 in damages to a plant that had not been interfered with except by the reduction of the area of its unused land, and that was worth as a whole no more than was thus claimed, would have been apparent. If the land taken was to be valued as land merely, then the capital stock, the volume of the business and its character as to profits were immaterial; but if the

land was to be treated as part of a gas plant and damages were to be assessed on that basis then the value of the plant was a pertinent and indeed, a necessary inquiry.

The fourth assignment of error requires some notice. It complains that the motion of counsel for defendant to strike out the whole of the testimony of John Slingluff was refused. Some portions of it ought to have been struck out, but some portions of it were admissible, and we cannot say it was error to refuse the motion as made. The assignment suggests the question however as to the extent to which expert testimony is competent in a case like this. One who is familiar with the value of land in the vicinity of the land taken might be offered as an expert upon that subject; but a knowledge of values in Philadelphia or Norristown would not qualify a witness to speak, as an expert, of values in Royersford. So a man might be familiar with the value and use of the appliances necessary to the production of gas, so as to be qualified to speak as an expert of the value and effectiveness of the machinery and fixtures used in any given gas works, but unless these are injured or their operation interfered with by the entry complained of, it is not easy to see what place there is for such an expert in the witness box. In this case the machinery and structures of the gas works were untouched. Its productiveness was not diminished in the slightest degree. There is still room within the inclosure to increase the capacity of the works, if an increase should become necessary; but up to the time of the entry by the defendant, and up even to the time of the trial in the court below, no such increase had been found necessary. The plaintiff had been deprived of one quarter of an acre of unoccupied land and of nothing more. Mr. Slingluff did not pretend to know the value of the land. He said: "I am not acquainted with the market value of real estate generally in the locality or the improvements. . . . I can't say that I know the value of any properties including improvements, in Royersford." His expert knowledge related to machinery for producing gas and the process of manufacture, neither of which was involved in this controversy. But it is contended that inasmuch as the land taken was within the exterior lines of the tract owned by the plaintiff and upon which its gas works were situated it was therefore part of the gas plant. This is a non sequitur. The

fact stated does not support the conclusion. Whatever is necessary or convenient to the production, storage, and distribution of gas is part of the gas plant. On the other hand that which is not used or needed for use in the actual business of the company is not a part of the plant though owned by the gas company. What may happen in the next generation, if the neighboring villages should become cities, is a possibility that does not concern the jury. They might as well conjecture whether gas would not cease to be used altogether as an illuminant, and its production be abandoned. The question is one of actual value, the market value at the time of the appropriation. What was the property of the company worth before it was entered by the defendant? What was it worth immediately upon such entry? The difference represents the loss, if any, that has been sustained. The judgment is reversed and a venire facias de novo awarded.