William    Struthers    *v.*    The    Philadelphia    &    Delaware
County Railroad Co., Appellant.

*Railroads—Eminent domain—Measure of damages.*

The measure of damages for land taken by a railroad company is the
difference in the market or selling value of the property entered before
the entry was made, and afterwards.

In a proceeding against a railroad company to recover damages for
land condemned, there was some slight evidence tending to show that the
plaintiff was the owner of a right of way that was obstructed by the build-
ing of the railroad.    An expert witness placed its value at $1,000.    The
court charged: "There is some evidence that there was a right of way
there by immemorial usage, and if you come to the conclusion that there
was a right of way there you may consider its value.    If you come to the
conclusion that there was an element of damage there you can allow it.".
*Held* (1) that the jury might well understand from this instruction that the
right of way if found to exist might be separately valued, and added to
such other items as they might allow in order to make up the amount of
their verdict; (2) that the jury had no right to allow damages for distinct
items whether estimated by experts or other witnesses, and reach the
amount of their verdict in that manner; (3) that the instruction was erro-
neous.

*Evidence—Definition of expert witness.*

An expert is a person experienced, trained and skilled in some particular
business or subject.    An expert witness is one who, because of the posses-
sion of knowledge not within ordinary reach, is specially qualified to speak
upon the subject to which his attention is called.

The knowledge relied on to give the testimony of a witness the value of
that of an expert must relate to the subject under investigation.

*Railroads—Eminent domain—Damages—Expert witness.*

In proceedings to assess damages for land taken by a railway company,

if a witness called by the plaintiff as an expert has no knowledge of the prices of land in the neighborhood before and after the location of the railroad, he ought not to be allowed to guess from his knowledge of prices in some other neighborhood, and have such guess left for the consideration of the jury as expert testimony.

In such case a witness called by the plaintiff as an expert testified that he had no special knowledge of the property until after the railroad was constructed; that he then went and examined it and made inquiry as to sales in the neighborhood, and that what he found out about the sales was ascertained within two or three weeks of the trial. *Held,* that he was not qualified to testify as an expert.

Argued Feb. 14, 1896. Appeal, No. 133, Jan. T., 1896, by defendant, from judgment of C. P. Delaware Co., Dec. T., 1893, No. 45, on verdict for plaintiff. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Appeal from award of viewers. Before CLAYTON, P. J.

At the trial it appeared that in 1893, the defendant constructed a line of railroad through a farm of one hundred and twenty-one acres in Delaware county, owned by the plaintiff. The witnesses for the plaintiff fixed the damages at figures varying from $9,000 to $13,000, while the evidence for the defendant tended to show that the farm had increased in value by reason of the construction of the railroad through it.

George Ashbridge, a witness for plaintiff, testified that the value of the property before the taking by the railroad was $33,275 and after the taking it was $22,686; that the elements of damage were three and sixty-four one hundredths acres of land taken by the railroad company at $275 an acre and a depreciation of the entire tract of $75.00 an acre, a total of $8,750. Under objection and exception he was permitted to testify that in addition to the above there was a destruction of a right of way which he valued at $1,000. [1]

The witness further testified that he had been employed by the Girard Trust Co., by the estate of Eli K. Price, by the Pennsylvania Hospital, by the Phila. Trust Co., by the Real Estate Trust Co., by the United Security Co., and many individuals besides, to estimate the values of property and their depreciation under similar circumstances; that he had examined the property in question shortly after the railroad work began and that he had seen it again afterwards and that the result of his exam-

ination enabled him to state its value before the taking and its depreciation afterward; that he did not know of any land being sold in that neighborhood. He was then permitted under objection and exception to give his valuation of the land before and after the taking by the railroad company. [6]

The testimony of William Bradley a witness for plaintiff was also objected to because he was incompetent.

The Court: I am inclined to think the witness is competent to testify. You may examine him. He says he is in the real estate business. He says that has been his occupation for ten years. He also testifies that he is familiar with the values of the ground around here, and has known of one sale, and has visited the land as a real estate agent to see what it was bought and sold for. I think he can testify. Exceptions and bill sealed. [7]

Charles B. Sprogle, a witness called by the plaintiff as an expert, testified that he had no special knowledge of the property until after the railroad was constructed; that he then went and examined it, and made inquiry as to sales in the neighborhood, and that what he found out about the sales was ascertained within two or three weeks of the trial.

His testimony then proceeded:

The Court: Q. You have been on the land, have you? A. Yes, sir, and examined it.

Mr. Pinkerton, for defendant: Q. When did you go on this land for the purpose of examining it? A. In the latter part of last December. Q. But you never have been on it at any other time? A. No, sir.

Objected to because the witness has not shown himself to be sufficiently acquainted with properties in the neighborhood.

The Court: I think he can testify as far as his testimony goes, and will give you an exception. Bill sealed. [8]

William Struthers, the plaintiff, was recalled to testify to the right of way.

Mr. Pinkerton: I object to this.

The Court: I will give you an exception.

The Court: I wish you would tell me one thing, Mr. Struthers. As I understand it you did not claim any right of way over this man's land? A. Judge, I had been using that for five years after I bought the property. I used that right of way continually dur-

ing all that time.   Q. But when you bought the property was it a part of your bargain that you had the right to go over this land?   A. Yes, sir, it was understood when I bought it that I had the right of way.

The Court: Then I will let it go to the jury.   Bill sealed. [9]

The court charged in part as follows :

[What other damages are there?   It is said that they interfered with the right of way, and that he has lost the right of way over that road to go to mill, church and market.   So far as that right of way is concerned, I instruct you that the evidence is very shadowy.   There is barely enough evidence upon that point for the court to permit it to go to the jury.] [2]

\*    \*    \*    \*    \*    \*    \*    \*    \*

[An old deed has been produced showing that there was a right of way appurtenant to the old sawmill which belonged to a man named Barnes.   The right of way appurtenant to a sawmill does not mean that it belongs to the whole one hundred and twenty-one acres.   So far as the deed is concerned, it does not make out the title.   The deed was subject to a lien of six pounds a year if the owner demanded it.   It was a right, therefore, that could be determined or paid for by an annual payment.   It was a right appurtenant to a sawmill and not to the one hundred and twenty-one acres.   Yet, the plaintiff says that when he bought the land it was understood between him and the seller that he had the right of way over it, but he does not say that he went to see the owner of servient tenant.   This right of way depended upon the demand of the servient tenant. The owner of the dominant tenant said you have the right of way.   It was his duty to have then gone to the man whose land he was going over and ask if that was so.   He should have told him that he had a right of way over his land, and if he admitted it, it would then have been established.] [3]

\*    \*    \*    \*    \*    \*    \*    \*    \*'

[Still there is some evidence that there was a right of way there by immemorial usage, and if you come to the conclusion that there was a right of way then you may consider its value. The evidence is that it was abandoned.   If you come to the conclusion that there was an element of damage there you can allow it.] [4]

\*    \*    \*    \*    \*    \*    \*    \*    \*

[Then you had the testimony of Mr. Ashbridge, who says, that the land was worth $150 an acre, and has depreciated until its value is only $75.00 an acre, and the value of the old right of way that has been destroyed is fixed at $1,000. A verdict of $1,000 for the destruction of that right of way would not be sustained by the court under the evidence.] [5]

Verdict and judgment for plaintiff for $5,500. Defendant appealed.

*Errors assigned* were (1, 6–9) rulings on evidence, quoting the bill of exceptions; (2–5) above instructions, quoting them.

*John J. Pinkerton,* for appellant.—If the plaintiff claims that he has the right of way over the lands of another, he must show that such right has been continued, and with the acquiescence of the owner of the land, for twenty-one years : Jones v. Crow, 32 Pa. 398; Arnold v. Cornman, 50 Pa. 361; Walton's App., 9 Atl. Rep. 923.

The court was in error in permitting testimony to be given that the loss of the right of way to the plaintiff was $1,000, and then saying to the jury that "a verdict of $1,000 for the destruction of that right of way would not be sustained by the court under the evidence : " Del. & Hudson Canal Co. v. Barnes, 31 Pa. 193; Erie & Wyoming Val. R. R. v. Smith, 23 W. N. C. 511; Penna. R. R. v. Butler, 57 Pa. 335.

It is the duty of the party offering a witness to show that he had ample means of forming an opinion of value. His own statement that he knew it is not sufficient: Flint v. Flint, 6 Allen, 34; Michael v. Crescent Pipe Line Co., 159 Pa. 104; R. R. v. Vance, 115 Pa. 331; Gas Light Co. v. R. R., 167 Pa. 6.

Whenever the circumstances can be fully and adequately described to a jury, and are such that their bearing on the issue can be estimated by all men, without special knowledge or training, opinions of witnesses, expert or otherwise, are not admissible: Graham v. P. R. R., 139 Pa. 149; R. R. v. Patterson, 107 Pa. 461; Pittsburg, Va. etc. R. R. v. Vance, 115 Pa. 331; R. R. v. Stocker, 128 Pa. 248; Michael v. Crescent Pipe Line Co., 159 Pa. 99; Gas Light Co. v. R. R., 167 Pa. 6.

*William S. Ellis* and *V. Gilpin Robinson, E. G. Hamersly*

with them, for appellee.—The appellant has nothing to complain of as to the disposition of the court of the evidence relating to the right of way. Upon the contrary, the view taken by the court was very greatly to its advantage, as it eliminated from the case almost entirely a very material element of damage to Mr. Struthers' property.

The court committed no error in submitting the evidence offered to the jury, because it was amply sufficient to submit to the jury to prove plaintiff's title to the lane by prescription: Thompson v. Phila. Coal & Iron Co., 133 Pa. 46; Garrett v. Jackson, 20 Pa. 335; Pierce v. Cloud, 42 Pa. 114; Carter v. Tinicum Fishing Co., 77 Pa. 310; Jones v. Crow, 32 Pa. 398; Arnold v. Cornman, 50 Pa. 361.

The witnesses called as experts by the plaintiff were properly qualified: Rogers on Expert Testimony, 2d ed. sec. 18; First Nat. Bank v. Wirebach, 106 Pa. 37; Steamboat Co. v. Starrs, 69 Pa. 36; Minnequa Spg. Impt. Co. v. Coon, 10 W. N. C. 502; Ardesco Oil Co. v. Gilson, 63 Pa. 146; Leazure v. Hillegas, 7 S. & R. 313; Flinn v. McGonegle, 9 W. & S. 75; R. R. v. Robinson, 95 Pa. 426; Jones v. R. R., 151 Pa. 30.

Where there were no sales the witness could not have known, and it is not necessary, in order to qualify him, that he should know of sales: Curtin v. R. R., 135 Pa. 30.

The decision of this court in Michael v. Crescent Pipe Line Co., 159 Pa. 99, relied upon by appellant, was directed to the competency of a witness having a knowledge of the effect of a pipe line upon lands. It has no special application to the case under consideration.

Whilst Mr. Sprogle has never been on the property until December of 1894, still he was qualified, from his knowledge of the business of buying and selling and of value in the vicinity, to say what this property was worth for the special purpose to which it was best adapted.

OPINION BY MR. JUSTICE WILLIAMS, March 9, 1896:

The several assignments of error appearing on the record in this case raise but two questions, and they are questions about which the profession ought to be in no doubt. One of these is over the measure of damages to which the owner of land is entitled when his land has been entered upon under the right of

eminent domain. The other is, what constitutes an "expert witness?" The true measure of damages has been held in a long and unbroken line of cases to be the difference in the market or selling value of the property entered, before the entry was made, and afterward: Railway Company v. McCloskey, 110 Pa. 436 ; Railway Company v. Vance, 115 Pa. 325 ; Setzler v. Railroad Company, 112 Pa. 56 ; Curtin v. Nittany Valley Railroad Co., 135 Pa. 20 ; Mahaffy v. Beech Creek Railroad Company, 163 Pa. 158 ; Spring City Gas Company v. Penna. Schuylkill Valley Railroad Company, 167 Pa. 6. In this case the plaintiff was allowed to give evidence tending to show that he was the owner of a right of way appurtenant to his land that was obstructed by the building of the railroad, and that this item of damage amounted to $1,000. The evidence of the existence of the right of way was very slight and the learned judge so regarded it, as is evident from his charge. The evidence of its having any practical value to the plaintiff, if he had shown himself entitled to use it was equally slight. It is true that an "expert witness" had been found who placed its value at $1,000, but the learned judge took occassion to say when speaking on this subject to the jury that he would not sustain a verdict that should adopt the sum of $1,000 as the value to the plaintiff of the right of way. But he left this evidence to the jury in a manner calculated to leave an erroneous impression on their minds. He said "There is some evidence that there was a right of way there by immemorial usage, and if you come to the conclusion that there was a right of way there you may consider its value. If you come to the conclusion that there was an element of damage there you can allow it." The jury might well understand from this instruction, indeed it is not easy to see how they could reach any other conclusion, that the right of way if found to exist might be separately valued and added to such other items as they might allow in order to make up the amount of their verdict. But the jury have no right to allow damages for distinct items, whether estimated by experts or other witnesses, and reach the amount of their verdict in that manner. Their duty is simply to ascertain the loss in the selling value of the property entered due to the fact of the taking by eminent domain. This loss stands for the measure of damages because it embraces the effect of all the elements of depreciation taken

together. The other question ought to be equally free from difficulty. An expert is a person experienced, trained, skilled in some particular business or subject. An expert witness is one who because of the possession of knowledge not within ordinary reach is specially qualified to speak upon the subject to which his attention is called. Thus, a chemist, a physician, a mechanic, an artist, has special knowledge of the things that fall within the range of his studies and his daily practice, and because of such special knowledge, not within ordinary reach, his testimony upon a subject relating to his particular line of study or research is regarded as more exact and entitled to more weight than that of witnesses not possessing the same opportunities for acquiring thorough knowledge of the subject. Many persons may know something about a given question and be competent as witnesses to tell what they know. A few may have an intimate, an exceptional, knowledge and be entitled to speak as expert witnesses. Now the question to which the so-called expert witnesses were called in this case was the value of the plaintiff's land before the location of the defendant's railroad over it, and its value as affected by that location. That they were experts in the value of real estate elsewhere did not give to their testimony the value of expert evidence when they spoke of the plaintiff's property. If they had no knowledge of the prices of land in that neighborhood before and after the location of the railroad, they ought not to be allowed to guess from their knowledge of prices in some other neighborhood, and have such guess left for the consideration of the jury as expert testimony. Sprogle was a witness, but he certainly did not show himself to have knowledge not within ordinary reach on the subject of the value of the plaintiff's land. He had no special or peculiar knowledge of values in that neighborhood. He knew enough about the subject to be entitled to be heard as any other witness might be, but expert knowledge means more than that. It was a mistake therefore to treat or submit to the jury his evidence as that of an expert in values in the vicinity in which the plaintiff's land was situated. His evidence should have gone with that of other witnesses who spoke as witnesses simply; or in the language of the learned judge found in the bill of exceptions, "I think he can testify as far as his testimony goes." He might have been an expert in values in Philadel-

phia or Reading, but he did not show himself to be such as to Delaware county. The knowledge relied on to give the testimony of a witness the value of that of an expert must relate to the subject under investigation: Spring City Gas Works v. Penna. Schuylkill Valley Railroad Company, 167 Pa. 6. The judgment is reversed and a venire facias de novo awarded.