## Steele v. Shepperd, Appellant.

482

Argued March 20, 1963. Before Bell, C. J., Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*Charles F. Dean,* with him *David M. Janavitz,* for appellants.

*Zeno Fritz,* with him *Gregor F. Meyer,* for appellees.

Opinion by Mr. Justice Roberts, July 2, 1963:

James Steele and his wife, appellees, owners of the Bellevue Theatre Building in the Borough of Bellevue, Allegheny County, instituted an action of assumpsit for damages against Lewis A. Sheppard and Dora Foster, Executors of the Estate of Ike Browarsky, deceased, and Florence Lipscher and Joseph Browar, Executors and Trustees of the Estate of Harry Browarsky, deceased, and Associated Theatres, Inc., appellants, arising out of certain covenants and conditions in a written lease requiring lessees to keep and sur-

render the premises in a good state of repair. The term of the lease was from September 1, 1944, to August 31, 1959. With consent of the lessors, the lease was assigned on May 15, 1946, to Associated Theatres, Inc., with the proviso that Ike and Harry Browarsky were to remain personally liable upon it. Harry Browarsky died April 15, 1947, and Ike Browarsky died on April 19, 1954.[1]

Paragraph 3 of the lease provided that the lessees were to pay for all repairs to the premises, both interior and exterior, and were to surrender the premises upon termination of the lease in as good order and repair "as they now are, reasonable wear and tear excepted." Paragraph 8 of the lease required the lessees to keep and maintain all theater equipment in good order and repair and to renew and replace all worn out and broken equipment so that the theater equipment "shall at all times be kept in good condition; and at the expiration of the term [the lessees] will surrender the same in as good order and condition as when installed, reasonable wear and tear excepted."

At the conclusion of the trial, the jury rendered a verdict in favor of plaintiffs in the sum of $28,000. Defendants moved for a new trial, alleging errors in the admission of certain evidence and in receiving the testimony of a witness offered as an expert. The motion was denied, and this appeal followed.

During the trial, Charles E. Lang, called by plaintiffs, was permitted, over objection, to testify as an expert witness on the cost of repairing damages to 1,056 theater chairs and the cost of replacing several hundred yards of carpeting in the theater building.

"An expert witness is one who because of the possession of knowledge not within ordinary reach is

---

[1] This case was previously before us on appeal from an order sustaining preliminary objections and dismissing a third-party complaint. 402 Pa. 33, 165 A. 2d 666 (1960).

specially qualified to speak upon the subject to which his attention is called." *Struthers v. Phila. & Del. Co. R. Co.*, 174 Pa. 291, 298, 34 Atl. 443 (1896); accord, *Potter v. Glosser Bros. Dept. Store, Inc.*, 146 Pa. Superior Ct. 129, 22 A. 2d 28 (1941); 1 Henry, Pa. Evid. 4th Ed., §560 (1953). Conversely, a witness who, by his own testimony, has had no experience or special knowledge on the subject matter in controversy would be incompetent as an expert. See *Struthers v. Phila. & Del. Co. R. Co.*, supra; *Spring City Gas Light Co. v. Penna. S.V. R.R. Co.*, 167 Pa. 6, 31 Atl. 368 (1895); *Potter v. Glosser Bros. Dept. Store, Inc.*, supra. A qualified expert may be permitted to assert a relevant fact not generally known but known to him because of his special training and experience. But this special training and experience must be confined to technical knowledge which is beyond that of average men and to that which would be of assistance in determining the ultimate issues in the case.

A review of the testimony dealing with the qualifications of this witness indicates rather clearly that the objection to his qualifications as an expert should have been sustained. He was offered by plaintiffs as an expert on lighting fixtures, theater seats, and carpeting. On direct examination, he testified: "Q. What about such items as fixtures attached to the buildings, such as seats, lighting fixtures and things of that nature; what has been your experience so far as they are concerned. A. With seats I have had no experience, however, in this case, however, I talked to three different manufacturers, and, of course, they were often conversations, explained to them what my problem was, and they came up with what I thought was the proper answer."

His testimony on cross-examination was as follows: "Q. Mr. Lang, in relation to theatres, then, can you tell me, prior to this time that you were consulted

about this Bellevue Theatre when you ever examined seats previous to that time? A. Are you finished? Q. Yes? A. I have never examined seats of any kind at any time. Q. Then you don't feel as though you yourself could evaluate the cost insofar as repairing a condition, or making a condition similar to what it should be insofar as seats are concerned? A. I believe that if I could not have gotten that answer, I could have talked to— Q. Now, you have never had any experience regarding theatre seats, that is true, isn't it? A. That is true. Q. And if you never had any experience insofar as theatre seats are concerned, you then of your own knowledge could not formulate an opinion as to what it would cost to repair the damages to seats, would you? A. I believe I could, Mr. Dean. I have upholstered a chair, and painted a chair, and I can come up with a proper answer to reupholster a seat or a chair. Q. And who did you repair these for? A. For myself. Q. Oh, for yourself? A. That's right. Q. How many chairs did you upholster for yourself? A. Oh, in my lifetime, five or six. Q. Five or six? A. Yes. Q. And now you think you are an expert upholsterer? A. I think I could estimate the cost. Q. And they are the qualifications that you are going to use in conjunction with giving an opinion here of your own knowledge and experience as to the condition or cost of repairing or replacing seats in a theatre? A. In this case I came up with my own figure, and then talked to suppliers of theatre seats and upholsterers who gave me a foundation to work with. Q. But the only experience you had was the reupholstering the five or six chairs for yourself? A. That's right. Q. You never had any experience with theatres, with theater seats? A. That's right. Q. Your business is really construction business, isn't it? A. That's right. Q. And when you talk about construction business, you mean the building, and parts that

486

are parts of the building, isn't that true? A. That's right. Q. Your business in the construction business has nothing to do with carpets, is that right? A. That is true. Q. Can you tell me when you ever examined a theatre to evaluate insofar as carpet damage is concerned, if at all? A. The only theatre was the Bellevue Theatre. Q. The only theatre was the Bellevue Theatre? A. That's right. Q. And prior to that you have had no personal experience insofar as carpets, seats, etc. in a theatre are concerned, is that true? A. That is true."

Concluding as we must that the objection to the qualifications of this witness as an expert should have been sustained and his testimony excluded, and that a new trial must be granted, it is unnecessary for us to discuss appellant's remaining contentions dealing with the admission into evidence of certain letters, allegedly self-serving hearsay, and the introduction of pleadings in a prior independent action of ejectment.

Judgment reversed and new trial granted.