Frank Marlowe and Carol Marlowe, Appellants *v.* Lehigh Township, Appellee.

588

Argued November 16, 1981, before Judges MENCER, ROGERS and BLATT, sitting as a panel of three.

*Richard J. Orloski, Stamberg, Caplan & Calnan,*
for appellants.

*Michael P. Shay,* with him *Richard E. Santee, Jr.,
Sigmon & Ross, P.C.,* for appellee.

OPINION BY JUDGE ROGERS, February 19, 1982:

Frank and Carol Marlowe appeal from an order of the Court of Common Pleas of Northampton County refusing to take off a compulsory nonsuit entered at the close of their case in chief in an action in three counts naming as defendant the Township of Lehigh and seeking recovery of damages sustained to the Morlowes' real property and to the person of Frank Marlowe as a result of the township's alleged acts of negligence, trespass, and breach of contract.[1]

---

[1] The complaint in this matter says that three actions are laid, one in trespass, another in assumpsit and the third in "trespass q.c.f." There is not now and has not been for many years an action in trespass q.c.f. Essentially, the plaintiff seeks damages for injuries to his person and injuries to his real estate based upon the negligence or other wrongdoing of the defendant township and, of course, these actions are encompassed within an action in trespass. Their assumpsit count is based on what they assert is an oral agreement made by the supervisors that they would conduct surface waters through the easement granted by the Marlowes for this purpose and that they would keep the system directing the water in repair. They say that the consideration for the supervisors' promises was the grant of the easement.

The petitioners named the township supervisors as defendants in their original complaint which was dismissed on preliminary ob-

In reviewing the refusal to take off a nonsuit, we must assess the evidence in the light most favorable to the appellants, resolving every conflict in their favor, and giving them the benefit of every reasonable favorable inference. *Engle v. Spino*, 425 Pa. 254, 256-257, 228 A.2d 745, 746 (1967); *Strother v. Binkele*, 256 Pa. Superior Ct. 404, 409, 389 A.2d 1186, 1188 (1978); *Omrcanin v. Hassler*, 8 Pa. Commonwealth Ct. 224, 225, 302 A.2d 878, 879 (1973). Viewed in this light the appellants' evidence was to the following effect.

In March, 1972, the Marlowes purchased a parcel of land in Lehigh Township on which they constructed a single family detached residence. Shortly thereafter they became aware that, as a consequence of heavy rains, a considerable volume of surface water, collected and channelled by the township's Third Street which came to a dead end at the property boundary, would occasionally flow over the property. Alarmed by the proximity to his home of the storm water flow, Mr. Marlowe approached the township supervisors and requested assistance. Specifically, Marlowe suggested that a drain be installed at the end of Third Street and that the runoff water be there collected. However, after conducting an inspection, the supervisors determined that the most feasible method of alleviating the condition complained of was simply to concentrate and redirect the flow farther from the residence by means of a storm drainage system consisting of a catch basin, a pipe running underneath Third Street, and a drain and headwall at the terminus of the pipe (the precise

---

jections of the township. In their amended complaint the petitioners did not name the supervisors defendants. No objections were filed to our jurisdiction and our jurisdiction was therefore perfected pursuant to Pa. R.A.P. 741(a). In the interest of moving the case along we have disposed of it rather than transferring it elsewhere for disposition.

nature of the latter two of these components are not altogether clear in the testimony) all to be located beyond the Marlowe property. It was then agreed that the township would perform the work necessary to accomplish this objective and that, in return, the Marlowes would convey to the township an easement for drainage purposes describing by metes and bounds that portion of their property over which the township had indicated the storm water was to flow on completion of the work. Thereafter, the drainage system described above was constructed at the direction of the township supervisors and an easement for drainage purposes encumbering the Marlowe property was duly recorded on February 20, 1973.

Throughout the next several years the Marlowes became increasingly exercised by the failure of the drainage system to direct storm water over that portion of the property described in the deed of easement and by the tendancy of the flowing water as it was in fact directed to erode their lawn and to create, as they described it, a ditch some two feet or more in width and, at least in some sections, fifteen inches or more in depth. On several occasions Mr. Marlowe attended public meetings of the township supervisors and expressed his disappointment with the failure of the system to perform as anticipated. In late March, 1976, Mr. Marlowe was showing a friend the water flowing across his lawn in the ditch of the water's creation when the ground, apparently undermined by the flow, gave way and Mr. Marlowe fell into the ditch assertedly sustaining injuries to his back and head.

In count one of their Amended Complaint the Marlowes allege that the township was negligent in that its

> construction of the catch basin ... at Third Street and the piping of the water run-off toward the easement on the Marlowe property

was faulty and improper [and that the township thereafter] failed to make reasonable alterations or repairs of such defects.

At trial appellants called Franklin G. Trenge, a "realtor and real estate developer" with formal training in mechanical engineering, to testify as an expert concerning the design of the storm drainage system. After hearing direct and cross-examination on the matter of Mr. Trenge's expertise the trial judge ruled him unqualified as an expert on drainage system design. Appellants first argue that this ruling was erroneous.[2]

The question of whether a particular witness qualifies as an expert is a matter for the trial judge, *Abbott v. Steel City Piping Company*, 437 Pa. 412, 263 A.2d 881 (1970); *Griffith v. Clearfield Truck Rentals, Inc.*, 427 Pa. 30, 233 A.2d 896 (1967), and his decision on this matter will be reversed only for a clear abuse of discretion. *Erschen v. Pennsylvania Independent Oil Company*, 259 Pa. Superior Ct. 474, 477, 393 A.2d 924, 926 (1978) (authorities collected).

"An expert witness has been defined as a person who possesses knowledge not within the ordinary reach and who, because of this knowledge is specially qualified to speak upon a particular subject. Steele v. Sheppard, 411 Pa. 481, 192 A.2d 397 (1963); Simmons v. Mullen, 231 Pa. Superior Ct. 199, 331 A.2d 892 (1974)." *Id.* It is not necessary that an expert witness possess all of the knowledge within his special field of

---

[2] The appellants also argue that the trial court's decision, as authorized by Pa. R.C.P. No. 224, to limit testimony initially to the matter of the township's liability and to reserve the question of the extent of the damages sustained by the appellants deprived them of constitutional due process. The complete answer to this charge is that the appellants did not object at the trial to the invocation of Rule 224 and any objection they now have has been, therefore, waived. *Cf. Robert v. Chodoff*, 259 Pa. Superior Ct. 332, 393 A.2d 853 (1976); *Pennsylvania Railroad Co. v. Reading*, 249 Pa. 19, 94 A. 445 (1915).

endeavor. However, a witness who demonstrates by his own testimony that he has no experience or special knowledge of the matter at issue is incompetent as an expert. *Steele v. Sheppard*, 411 Pa. at 484, 192 A.2d at 398. On cross-examination Mr. Trenge conceded that his undergraduate training was in the field of mechanical, not civil, engineering and that his work experience had been primarily as a real estate salesman and developer. He then testified as follows:

Q:  And you act as the broker for Farmington Real Estate. Is that correct?

A:  That's right.

Q:  Do you—yourself do any of the design work?

A:  No.

Q:  You do not do any of the engineering studies for water runoff systems?

A:  No.

Q:  Do you belong to any associations or organizations involved with civil engineering?

A:  No.

....

Q:  Have you ever had any formal training in the design and engineering of water drainage or water runoff systems?

A:  No.

Q:  Your capacity is as a real estate broker. Is that correct?

A:  Well, yes. I have a broker's license but our main business is construction.

Q:  And you hire engineers to develop those systems. Isn't that correct?

A:  That's correct.

Q:  And you don't do any of that yourself?

A:  That's correct.

Q:  And you have no specific qualifications that you can give us here today that show you

were in any way trained in the engineering of those systems. Is that correct?

A: That's right.

From our review of Mr. Trenge's qualifications we conclude that the exclusion of his expert testimony on the issue of the storm drainage system's allegedly negligent design was not an abuse of discretion. In the absence of any other evidence tending to show that the construction of the ditch was faulty, the Court of Common Pleas correctly withdrew from the jury the question of the township's negligence as alleged in count one of the Amended Complaint.

In count two the Marlowes allege that by discharging water on portions of their property other than that described in the drainage easement, the township has trespassed upon their property and should be liable for the damages thereby caused. The lower court ruled that no actionable wrong had been proved, reasoning:

> The evidence shows that the water naturally flowed over the property of Plaintiffs. No intrusion occurred upon the Plaintiffs' land which would give rise to the Plaintiffs' cause of action.... The township was not responsible for directing the water on to Plaintiff's land, but only attempted to alleviate the condition. Any entrance on to Plaintiff's property was made at the request of the Plaintiffs.[3]

---

[3] The alleged injuries to the Marlowes' real property and Mr. Marlowe's personal injuries allegedly caused by the improperly maintained drainage system were also said by the judge not to carry liability based on Section 166 of the Restatement (Second) of Torts (1965) which provides that an unintentional and non-negligent entry does not subject the actor to liability to the landowner. The Reporters' illustrations plainly show that the facts of this case are not to be judged by Section 166. They give as illustrations of nonliability for unintentional and non-negligent entry the case of one slipping on ice and falling against a plate glass window, that of an automobilist suffering a paralytic stroke causing him to

We disagree with this rationale to the extent that it implies, as the township vigorously argues, that the Marlowes have not suffered an actionable wrong because the water now flowing over their property is the same storm runoff, albeit in a concentrated state, which was present before the township acted. The law in this Commonwealth is that one may not alter the natural flow of surface water by concentrating it in an artificial channel and discharging it with injurious consequences upon the land of another even though no more water is thereby collected than would naturally have flowed upon the other's land in a diffuse condition. *Rau v. Wilden Acres, Inc.*, 376 Pa. 493, 103 A.2d 422 (1954); *Hays v. Hinkleman*, 68 Pa. 324 (1871); *Elliot v. H. B. Alexander & Son, Inc.*, 41 Pa. Commonwealth Ct. 184, 399 A.2d 1130 (1979). Mr. Chief Justice HORACE STERN, after noting that it is not a necessary component of the plaintiff's case in such a trespass action to allege and prove that the absolute volume of water discharged on his land has been increased by its artificial diversion, states the applicable principle in *Rau v. Wilden Acres, Inc.*, 376 Pa. at 494-495, 103 A.2d at 423-424, as follows:

> Even a municipality, while not liable to a property owner for an increased flow of surface water over his land arising merely from changes

---

damage another's lawn, and cases of other such accidents, none similar to the allegations or proofs of the plaintiffs here. The sections of the Restatement that seem to us to be applicable are first, Section 158 saying that one is liable if he intentionally enters land of another, giving as illustrations the case of a person who intentionally throws a pail of water against another's house or erects a dam in a fashion which causes flooding to another's land. The township's activities which caused the flow of water on the Marlowes' land were clearly intentional and, therefore a trespass. Section 162 provides that one who trespasses, which it seems to us has been here sufficiently alleged, is liable for physical harm to the possessor of the land and to the possessor's land also.

in the character of the surface produced by the opening of streets and the building of houses in the ordinary and regular course of the expansion of the city, may not divert the water onto another's land through the medium of artificial channels.

This principle does no more than recognize the practical reality that damage may be caused by the discharge of surface water even when its volume remains unchanged if it is collected and discharged with augmented force. Indeed, as Mr. Marlowe somewhat hyperbolically testified:

In that respect, it didn't increase the water. It's what it—but it forced the water. It venturied the water. It presses it together. The pipe is not empty. The pipe is half full with dirt. The hole that was originally a hole, that's filled with dirt and this water comes shooting out like Niagara Falls.

We also disagree with the holding of the court below, predicated as we understand it on some theory of consent, that the Marlowes' recovery for damages resulting from the collection and discharge of water on their land is barred by their request for assistance from the township and by the agreement entered into between the Marlowes and the township. This conclusion ignores the uncontradicted testimony of Mr. Marlowe that his consent to the township's discharge of water was expressly limited to that portion of his property described in the Deed of Easement recorded on February 20, 1973, and that the damages concerning which he now complains result from the township's discharge of water onto other portions of his property. Therefore, we conclude that appellants have adduced sufficient proofs to create a jury question with respect to count two of their amended complaint.

Finally, in count three of their Amended Complaint the Marlowes allege that the township is in breach of its agreement "to keep the drainage system in repair and to channel the surface water only over the easement as agreed in the Deed of Easement of February 20, 1973." With respect to this allegation the court below held that no actionable wrong had been proved because

> Plaintiffs seem to suggest that since the water did not in fact run across the property granted in the easement when diverted by the drainage system, the Defendant should be liable for the failure to use the easement as granted. Plaintiffs have not shown that the failure to use the easement over which to drain the water was negligent, or brought about by Defendant's activity ...

While we agree with the court below that the complaint is, at many points, artlessly drawn, and while we agree with the proposition that the use, by the grantee of an easement, of land other than that described in the easement is, generally, an act in trespass and not in breach of the easement, the appellants have here sufficiently alleged that the township agreed to direct the surface water over a certain portion of the property, that in consideration of this promise the appellants conveyed to the township a drainage easement over that portion of the property and that the township has failed to properly perform its obligation. The evidence adduced at trial supports these allegations and no reason appears to us why the question of whether such an agreement was entered into and whether it has been breached by the township should not be presented to the jury. In this regard we are especially mindful that

> 'unless there are no conflicting inferences to be drawn it is far better to hear the defense ...'

Thus, a compulsory nonsuit may be entered only when the plaintiff cannot recover under any view of the evidence ...

*Scott v. Purcell*, 490 Pa. 109, 112, 415 A.2d 56, 58 (1980), quoting *Schechter v. Schechter*, 366 Pa. 30, 33, 76 A.2d 753, 755 (1950).

Accordingly, we enter the following

## ORDER

AND Now, this 19th day of February, 1982, the order of the Court of Common Pleas of Northampton County dated July 18, 1980, in the above-captioned case, is hereby reversed insofar as it denied the motion of the appellant herein for a new trial and to take off a compulsory nonsuit entered with respect to counts two and three of their amended complaint filed November 13, 1978, and the record is remanded for further proceedings consistent with this opinion; in all other respects the order of the Court of Common Pleas is affirmed.[4]

Judge PALLADINO did not participate in the decision in this case.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent.

I would transfer this trespass action to the Superior Court because after the plaintiffs filed an amended complaint, the Political Subdivision Torts Claims Act, Act of November 26, 1978, P.L. 1399, *as amended*,

---

[4] As is lamentably too often the case with appeals to this court, the record fails to show that a judgment was entered below and no objection has been taken to the appeal, denominated as being from the action of the court refusing to take off the nonsuit and for a new trial. Without condoning this deficiency, we disregard it in the interests of judicial economy.

formerly 53 P.S. §5311.101 *et seq.*, repealed by Section 333 of the Act of October 5, 1980, P.L. 693, presently 42 Pa. C. S. §8541 *et seq.*, is no longer applicable to the present case.

I appreciate the majority's well-intentioned desire to reach the merits of this prolonged case, but since we lack jurisdiction here we should refrain from doing so.