## Reardon *v.* Meehan, Appellant.

Argued November 30, 1966. Before BELL, C. J., MUS-MANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Michael Shekmar,* for appellants.

*Herbert Somerson,* for appellee.

OPINION BY MR. JUSTICE JONES, March 14, 1967:

This is an appeal from a judgment entered upon a verdict in a trespass action in favor of John F. Reardon (Reardon), and against Vincent Meehan and Mary Meehan, his wife (Meehans), in Court of Common Pleas No. 7 of Philadelphia County.

On October 31, 1959, Reardon, while delivering a case of beer to Meehans' home in Philadelphia, allegedly tripped on a fibre rug lying on the cement floor of the basement of that home as a result of which he fell and struck his eye causing serious physical injuries. In his complaint, Reardon alleged, inter alia, that his fall was due to Meehans' negligence in (a) failing to have said cellar properly lighted,[1] (b) maintaining and permitting to remain on the floor of said cellar a rug or carpet not securely or properly fastened to said cellar floor and (c) failing to warn (Reardon) of the dangerous condition of the cellar. After a trial before a court and jury, the jury rendered a verdict in Reardon's favor in the amount of $40,000. Motions for judgment n.o.v. and a new trial were dismissed, judgment was rendered on the verdict and from that judgment this appeal was taken.

Meehans challenge the validity of this judgment upon three grounds: (1) that there was no evidence of actionable negligence; (2) that the trial court erred in (a) permitting expert testimony as to the length of time the rug was curled prior to the accident and the causes and reasons for its inherently defective condition and (b) its instructions to the jury whether any changes had been made to the rug between the time of the accident and the trial.

The thrust of Meehans' argument for judgment n.o.v. is twofold: (1) that Reardon's allegation that Meehans negligently maintained and permitted the rug to remain on the floor without being properly fastened to the floor did not encompass maintenance of a rug with curled edges and (2) even if the rug was curled, proof was lacking that Reardon did trip on the curled portion of the rug. In evaluating this argument we

---

[1] In view of Reardon's testimony that the lighting was adequate, this allegation is not pressed.

adhere to the well established rule that the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the verdict winner, Reardon.

We are of the opinion that the allegation in the complaint was sufficient to encompass Reardon's proof that this rug, unfastened to the cement floor, had curled at its edges projecting an obstacle to travel over the floor. Meehans' reliance on *Gibbons v. The Harris Amusement Co.*, 109 Pa. Superior Ct. 484, 167 A. 250 (1933), is misplaced in view of the factual situation presented in the case at bar. In *Gibbons* Judge (later President Judge) KELLER stated: "It [the rug] was not in a torn or curled up condition which might cause a patron of the theatre to trip as in Frater v. Kresge Co., 95 Pa. Superior Ct. 574" (at p. 487). Even though permitting a rug to remain unfastened to a floor *per se* may not constitute negligence, yet where such rug, unfastened to the floor, is curled at its edges, the concatenation of such facts may well constitute evidence of negligence.

The evidence that the edge of the rug was curled and that such curl caused Reardon to fall and sustain injuries may be summarized: (a) Reardon testified that his "foot caught under the rug" and that he fell forward; while, at first, he stated "the rug must have been curled", he later clarified this statement: "Q. And you never examined that rug after you fell? A. Well, when I rolled over, I seen it. I wanted to see what I tripped over. Q. And what did you see? A. The rug was curled up. Q. What part of the rug was curled up? A. The front part of it was curled up."; (b) Brookstein, Reardon's employer called to assist Reardon, noticed that "the rug wasn't lying flat"; (c) a photograph, identified by Reardon as depicting the condition of the rug as it existed on the date of accident, indicated that the edge of the rug was curled about

464

one-half inch. Reardon also established that the curl in the edge of the rug lying on the cement floor of the basement, due to the fibrous nature of the rug, would have occurred within approximately two years of its date of purchase in 1955 and that the curling of the rug must have existed for a long period of time prior to the happening of this accident. Under such circumstances, Reardon's evidence was sufficient in nature to justify a finding of negligence upon the part of Meehans. The trial court properly refused to enter a judgment n.o.v.

Meehans next contend that they are entitled to a new trial because the trial judge permitted the testimony of an expert witness to be received in evidence. It was shown that this witness possessed twenty-five years experience in all phases of the carpet business, had installed hundreds of fibre rugs similar to the rug in question, was familiar with the contents of such rugs and their reaction to wear and use and had examined the rug in question, even though almost six years after the accident.[2] We are satisfied that the trial court properly determined that this witness had been shown as qualified in this field; of course, the weight to be given the testimony of the expert was for the jury. Cf. *Moodie v. Westinghouse Electric Corp.*, 367 Pa. 493, 80 A. 2d 734 (1951). This witness testified concerning the character of the tissue fibre and the other materials which went into the making of the rug; the physical reaction of such materials to any moisture in a below-grade cement basement floor; that distortion in such rugs, such as wrinkling, curling, or change of shape, is caused by a swelling of the fibres and that such distortion begins within six months and reaches its maximum within two years;[3] that a rug un-

[2] It was Meehans' position that this rug had not been changed or altered.

[3] Cf. *Folkman v. Lauer*, 244 Pa. 605, 610, 611, 91 A. 218 (1914).

fastened to a floor distorts more rapidly than a rug fastened to a floor.

"A qualified expert may be permitted to assert a relevant fact not generally known but known to him because of his special training and experience. But this special training and experience must be confined to technical knowledge which is beyond that of the average man and to that which would be of assistance in determining the ultimate issues in the case": *Steele v. Shepperd*, 411 Pa. 481, 484, 192 A. 2d 397 (1963). If all the primary facts can be accurately described to a jury and if the jury is as capable of comprehending and understanding such facts and drawing correct conclusions from them as are witnesses possessed of special training, experience or observation, then there is no need for the testimony of an expert. See: *Salem v. U. S. Lines Co.*, 370 U.S. 31, 82 S. Ct. 1119 (1962), rehearing denied 370 U.S. 965, 82 S. Ct. 1578; *Graham v. Penna. Co.*, 139 Pa. 149, 159, 21 A. 151 (1891). The employment of testimony of an expert rises from necessity, a necessity born of the fact that the subject matter of the inquiry is one involving special skills and training beyond the ken of the ordinary layman: *Weisman v. Sauder Chevrolet Co.*, 402 Pa. 272, 167 A. 2d 308 (1961); *Jemison v. Pfeifer*, 397 Pa. 81, 152 A. 2d 697 (1959); *Delair v. McAdoo*, 324 Pa. 392, 188 A. 181 (1936). Meehans urge that the expert witness' testimony was inadmissible because the matter in issue was capable of evaluation by the jury without the assistance of one claiming special knowledge upon the subject. *Collins v. Zediker*, 421 Pa. 52, 218 A. 2d 776 (1966), relied upon by Meehans, factually is entirely different from the case at bar. Our reading of this record indicates that the expert witness was well qualified to speak on the matters of which he was inquired and that the subject matter of his testimony, i.e., the constituents of fibre rugs, the reaction of such constitu-

ents to moisture, etc., was of such nature that the ordinary layman would not have the knowledge or training upon which to base a sound judgment. The testimony of the expert witness did not invade the province of the jury; on the contrary, it was of aid in a field where only special knowledge and training would enable a person to reach a sound conclusion. The expert's testimony revealed the tendency of this type of fibre rug to curl and that such curling, by reason of the materials in the rug, would have taken place at such a period of time prior to the happening of the accident that the Meehans, in the exercise of due care, should have known that the edges of the rug had curled. We find no merit in this contention of Meehans. The qualifications of this witness and the competency of his testimony, to a considerable extent, were matters within the discretion of the court below. See: *Cooper v. Metropolitan Life Ins. Co.,* 323 Pa. 295, 301, 186 A. 125 (1936); *Stevenson v. East Deer Township,* 379 Pa. 103, 106, 108 A. 2d 815 (1954). This record reveals no abuse of such discretion.

Lastly, Meehans urge that the trial court erred in certain instructions given to the jury. After the jury had deliberated for some period of time it then returned to the courtroom and, in the presence of counsel, the following colloquy took place: "The Foreman: Sir, could I ask a question? The Court: No, because both attorneys have a right to object to any question you might ask. Up to now they have made no objection, and they may make no objection, but I can't let you ask a question not on the record. The Foreman: I believe everyone will be satisfied to just feel the condition of the rug. The Court: I will answer the question, but I can't let you ask it confidentially. Both attorneys have a right to hear your question, and either or both may object to it, and I have to make a ruling if it is objectionable. I don't want to know how you

are deciding this case or what the status of the decision is that you have reached. The Foreman: The question is raised as to whether anything had been done to this rug since the time of the accident. Juror No. 4: After the accident, this rug was on the floor of the basement. Right now, *I want to know if you can answer the question whether anything was done to this rug, whether it was turned over or cleaned or anything done whatsoever before any pictures of the rug were taken.* The Court: *There was no testimony on that, so I cannot answer your question. You must be guided by the testimony which said nothing about whether anything was done to this rug after the accident.* You may all feel the texture of the rug. By agreement of counsel, the Court will consider that the rug rolled up as it was presented in the Court by Mr. Shekmar, he having stated the time it was in his office, is shown to the jury only for the purpose of the jurors feeling the texture of the rug and for no other purpose." (Emphasis supplied).

Meehans now urge that, when the trial court told the jury that there was no testimony whether anything had been done to the rug, and whether it had been turned over or cleaned or anything done before any pictures of the rug were taken, such instruction was erroneous. Meehans point to certain testimony of Mrs. Meehan that she had not changed or reversed the rug and that she had not done anything to the rug between the time the Meehans' photographs of the rug were taken (January, March 1960) and the time Reardon's photograph was taken (December 1960) as a direct contradiction to that which the trial court told the jury. Be that as it may, Meehans' counsel did not object nor take any exception to the court's instruction at the time it was given nor did counsel make any effort whatsoever to direct the court's attention to what counsel deemed to be an erroneous instruction. Under

such circumstances, the instruction, even if erroneous, furnishes no basis for the grant of a new trial.

In *Lobalzo v. Varoli*, 422 Pa. 5, 6, 7, 220 A. 2d 634 (1966), we recently reiterated the rule well settled in such circumstances; "The law is clear that . . . the order of the lower court will not be reversed where only a general exception was taken unless the errors committed were basic and fundamental and could not have been corrected at the trial.

"This rule is founded on the principle that counsel shall not sit idly by, take his chances with instructions given at trial, and then, having lost the case, seek a new trial and a second opportunity, on the ground that the charge was prejudicial to his client."

Even if the court's instruction was erroneous, it was certainly not fundamental error. In the absence of any objection or exception made at the time of the instruction, such error, even if it was an error, does not justify the grant of a new trial.

Judgment affirmed.

Mr. Chief Justice Bell and Mr. Justice O'Brien dissent.