## Dappolone v. Andrews

18

*Ronald Ziegler*, for plaintiff.
*Harold Marcus*, for defendants.

GREENBERG, *J.*, June 20, 1978—Presently before the court is defendants' motion for new trial.

The factual setting of this case is as follows:

On January 11, 1975, plaintiff-husband was injured when a van-truck he was operating was struck head-on by a tractor trailer being operated by defendant, Kenneth Andrews. As a result of the accident, plaintiff suffered serious injuries which are, in part, permanent. At the conclusion of the trial, the jury returned a verdict in favor of plaintiff and against defendants in the sum of $480,000 ($20,000 of which was awarded to plaintiff-wife for loss of consortium).

Defendants have filed their motion for new trial on the ground that we erred: first, by permitting the plaintiff's expert witness, Dr. Les Seplaki, an economist, to testify to his opinion of the age to which plaintiff-husband would have worked if he had not been injured; second, by permitting the same witness, in projecting plaintiff's future lost earnings, to include a $10 per week increase as set forth in past and present union contracts; and third, by permitting the projection of future lost earnings based upon plaintiff's contention that he is permanently and totally disabled, when defendants contend that this was not proven.

In addition, defendants have moved for a new trial on the ground that the verdict was excessive.

We believe defendants' contentions are without merit and accordingly deny their motion for new trial.

First, defendants argue that we committed reversible error in permitting plaintiff's expert, an economist, to testify that in his opinion plaintiff had a work-life expectancy from the date of trial of 10.8 years or to age 70. Defendants assert that the expert's opinion went well beyond the permissible bounds of expert testimony and constitutes a ground for a new trial. Defendants argue that the issue of future lost earnings is determined on the basis of anticipated future yearly earnings multiplied by the number of years he would have worked had he not been injured. In making this calculation, the jury is required to consider factors which traverse virtually every aspects of life: sex, prior state of health, nature of daily employment and its perils, if any, manner of living, personal habits, individual characteristics and other facts which may affect the duration of the injured party's life; in short, imponderables which simply are not subject to clear scientific assessment. To have permitted Dr. Seplaki to give his opinion of the work-life expectancy of plaintiff constituted an obvious intrusion into a pivotal part of the jury's fact-finding process, defendants conclude.

We believe that this court committed no reversible error by permitting Dr. Seplaki to testify. The Pennsylvania Supreme Court in the case of Reardon v. Meehan, 424 Pa. 460, 227 A. 2d 667 (1967), has said that:

" 'A qualified expert may be permitted to assert a relevant fact not generally known but known to him because of his special training and experience. But this special training and experience must be confined to technical knowledge which is beyond that of the average man and to that which would be of

assistance in determining the ultimate issues in the case.' " The opinion of Dr. Seplaki was in accordance with this standard.

Dr. Seplaki testified that he considers work-life expectancy tables "much less accurate than using the actual retirement age of a specific person in a specific situation because such tables of the Department of Labor are based on age ranges." Dr. Seplaki testified that, as an economist, he was familiar with "the current legislative trends where even the presently prevailing rather widely used age 65 at the moment is being challenged and may very well be eliminated . . . so I would think in the case of an individual who has a consistent working history that age 70 would be quite reasonable." Dr. Seplaki also considered the fact that plaintiff's union agreement provided for no mandatory retirement age, thus he testified that it was important to him that plaintiff "was not going to be under compulsion to retire at age 65."

Thus it was Dr. Seplaki's special training and experience as an economist which enabled him to become familiar with the current legislative trend toward establishing retirement at age 70, as well as the significance of the type of union agreement in question. That this is so is substantiated by the fact that both Congress and the United States Supreme Court recognized age 70 as a proper retirement age a short time after he testified.

Defendants did not produce any testimony as to the legislative trends or the usual age at which workers such as plaintiff retire or any evidence about his living habits or anything else which might affect his work-life expectancy. All of this

evidence, including the expert's opinion, was introduced by plaintiff. All of it could properly be considered by an expert economist such as Dr. Seplaki as he did in this case. Defendants argue now that the jury was not entitled to the expert's opinion based on his expertise and the testimony. As indicated, the law is to the contrary. Defendants' argument might have more validity if they had presented evidence to contradict that of plaintiff as to his work habits, life style, etc. But where, as here, the evidence is undisputed, their contention has no merit, especially in light of the charge of the court on this subject as hereafter discussed.

Here the opinion of Dr. Seplaki related to the value of work-life expectancy tables as opposed to the background of the injured party, the current legislative trend as to retirement age and the significance of a union agreement without a mandatory retirement age, and the age to which plaintiff's father worked, all factors within the expertise of Dr. Seplaki: Reardon v. Meehan, supra.

Assuming that an argument could be made that this testimony was improper, at most it was harmless error in view of our charge to the jury on this subject.

We specifically discussed the opinion of Dr. Seplaki in our charge to the jury and instructed the jury to consider the qualifications and reliability of Dr. Seplaki and the reasons given for his opinion. We further advised the jury that it was not bound by Dr. Seplaki's opinion merely because he was an expert and that the jury could accept or reject such opinion. Further the court stated that it was up to the jury to give the weight, if any, to which it deemed the opinion of Dr. Seplaki to be entitled.

In addition, we specifically charged the jury as to the criteria to be considered in connection with future lost earnings: "In considering that amount you may consider the type of work plaintiff has done, the type of work in view of his physical condition, experience, education and age he would have been doing and would be doing in the future, the extent or duration of plaintiff's injuries, together with all other matters which are reasonably relevant."

We further discussed in our charge as to how the jury should consider the specific testimony in this case as to work-life expectancy stating as follows:

"Now, with respect to work expectancy you heard testimony about that. The expert did not use any table on that. He took it on the basis of the evidence presented to him by the Plaintiff, about the Plaintiff's father, and all the other items he took into account in determining that the work-life expectancy was 10.8 years; Defendant contends that you are not bound by that and the law says you are not, but that you should take into consideration that people do stop working earlier. All of the evidence you take into account on that, based on what you heard here, the evaluation of the Plaintiff, the job he held, work record before, what happened afterwards and putting that all together you may consider that testimony of life expectancy or not. It is entirely up to you."

Counsel for defendants took no exception to any portion of the charge on this subject matter. Our charge was proper and in accordance with the applicable law: McCaffrey v. Schwartz, 285 Pa. 561, 132 Atl. 810 (1926); Pauza v. Lehigh Valley Coal Company, 231 Pa. 577, 80 Atl. 126 (1911).

Thus it is evident that no reversible error was committed by permitting Dr. Seplaki to testify in light of this court's charge to the jury.

Second, defendants submit that we erred in permitting plaintiff's economist, Dr. Seplaki, to project plaintiff's loss of future earnings upon a $10 per week per year earning increase, the projection of which defendants claim is contrary to law in Pennsylvania on the basis of the ruling in Havens v. Tonner, 243 Pa. Superior Ct. 371, 365 A. 2d 1271 (1976). Defendants argue that the $10 per week increment was reflective of the increase generally given to all routemen employed by plaintiff's successor employer for several years prior to trial; it was in no way shown to be related to the individual industry of plaintiff himself. Defendants assert that the historical $10 per week increase was too speculative to constitute a satisfactory predicate for the projection based thereon. The only testimony concerning the past increases was that of Edward Diodata, operations manager of plaintiff's successor employer. In response to a question by plaintiff's counsel as to the yearly increase under the contract in effect in 1972 to 1975, he replied: "There was a fluctuation as there was here (under the present contract) of $5 or $10 dollars, but I don't know the exact figures and I don't want to say them."

The court then propounded a question to Mr. Diodata: "What you're saying is that in any three (3) year contract the fluctuation might have been a $5 raise after the first year and another $5 after the second year." Diodata replied with respect to base salary, that was correct. Defendants argue that the foregoing testimony is not sufficient to establish a

previous yearly increase of $10 per week and its admission warrants the granting of a new trial.

We believe that no error was committed and defendants' contention is without merit. In Havens v. Tonner, supra, the three and one-half percent "productivity factor" involved therein "was based upon nothing but the economist's assertion that experience demonstrated that industrial productivity increased annually by at least that much due to improved technology and that this improvement was normally passed along in the form of increased wages." The court believed such a factor was too speculative.

However, in the case at bar, the record is clear that for at least two years prior to the date of trial the rate of increase for workers in plaintiff's type of employment with his successor employer was at the rate of $10 per week per year. The union agreement covering plaintiff's employment was received into evidence (see plaintiff's exhibit no. 6) and such a rate of increase was set forth therein.

Unlike the Havens v. Tonner case, supra, Dr. Seplaki did not use a "productivity factor" in calculating future loss of earnings but relied on actual work experience and the provisions of a union contract as to the rate of increment for plaintiff in his own employment. In Havens, supra, the "productivity factor" was merely a general assertion as to general industrial productivity and not based upon plaintiff's own work and salary experience. In the instant case, the wage increases assumed by Dr. Seplaki were based on plaintiff's own salary, experience and work potential as contained in the testimony about past increases for him as required by union contracts.

Defendants' argument that the $10 per week per year increment was not related to the individual industry of plaintiff himself is without merit since plaintiff was a routeman and such routemen were governed by the provisions of the union agreement (plaintiff's exhibit no. 6). Such evidence is neither speculative nor inadmissible.

Certainly, based upon the union agreement, there was some evidence in the record from which a jury could find increments equal to $10 per week per year representing the "earning potential of the individual in question." Thus, there was no error committed.

. . .

Since we believe defendants' contentions are without merit, we deny their motion for new trial and enter our order accordingly.

### ORDER

And now, June 20, 1978, defendants' motion for new trial is denied in accordance with our accompanying opinion and judgment is entered for plaintiff on the verdict.