408 Pa. Superior Ct. 563 (1991)
597 A.2d 175
ELECTRON ENERGY CORPORATION
v.
Edwin P. SHORT, Jr. and Purdy Engineers, Incorporated, Appellants.
Superior Court of Pennsylvania.
Argued April 4, 1991.
Decided August 20, 1991.
Reargument Denied October 16, 1991.
*566 Timothy J. Huber, Lebanon, for appellants.
Frederick S. Wolfson, Lebanon, for appellee.
Before WIEAND, HOFFMAN and BROSKY, JJ.
BROSKY, Judge.
This is an appeal from a judgment entered after requested post-trial relief was denied. Appellants raise several issues including whether a professional individual who, individually, is not a party to a contract can be found liable for breach of contract when he performed the work under the contract? Appellants also argue that there was a failure to prove that there were damages resulting from design error, and also argue that appellee failed to prove damages in other regards. After careful consideration of arguments advanced by both parties we affirm in part, and reverse in part, the judgment appealed from.
Appellant Edwin P. Short is the president and sole shareholder of Purdy Engineers. Appellee Electron was considering the building of a new manufacturing facility and wished to design a heating and cooling system which would capture and utilize heat from the manufacturing process. Appellant Short was contacted to assist in this process. A letter was sent by Short to appellee with a letterhead reading "Purdy Engineers, Incorporated" setting forth a proposal to provide "construction management services." In greater detail the letter went on to specify the services to be rendered, indicating that the services would be provided by Purdy Engineers. Next to the word "agreed" the letter/proposal was signed by Edwin P. Short with "Edwin P. Short, Jr. P.E." "Purdy Engineers, Inc." written on two lines underneath. The document was further signed, under the same heading, by "Marlin S. Walmer, Pres." "Electron Energy Corp." Curiously, as to the document itself, nowhere in the document is the specific purpose of designing *567 a heating and cooling system explicitly set forth. Nor is there any mention of how the system would perform, nor can there be found any guarantees of performance of a heating and cooling system. In fact, the following disclaimer preceded the specific proposals set forth in the document: "[t]he portion of the total project for which this firm is proposing to provide consulting services is generally limited to performing as the Owner's authorized representative, for the specific functions as hereinafter listed, and not to function either as the design professional for the structure nor as the General Contractor, ..."
Regardless of the wording of the document it appeared understood that Short's primary function was to design and coordinate the construction of a heating and cooling system for the new plant that would capture and utilize by-product heat from the company's manufacturing process. After construction on the new plant had begun appellee found Short largely unavailable. Additionally, after construction was completed problems developed with the system that required modifications and replacement of certain parts. Appellee instituted this suit naming both Short and Purdy as parties in breach of contract. However, there was not a count for negligence or malpractice. After a non-jury trial a verdict was returned for appellee in the amount of $97,914.21. Post trial motions were filed and denied. This appeal followed.
Appellant Short first argues that it was erroneous to find him personally liable for breach of contract because he was not a party to the contract. We agree. It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract. See, Viso v. Werner, 471 Pa. 42, 369 A.2d 1185 (1977). In the present case, the trial court acknowledged this rule of law but construed a provision of the Business Corporations Law relating to professional corporations to eliminate this, sometimes technical, distinction as to a professional rendering professional services. The trial court also hedged somewhat by suggesting that it was not entirely clear that the *568 contract was signed solely in a representative capacity. Upon review we find both justifications lacking.
In considering similar facts in the Viso case, our Supreme Court concluded that the signatory to the contract there was not assuming personal liability and was not properly considered a party to the contract. The Court stated:
Admittedly, the mere signature of the appellant preceded by the word "by" and following the typed name of the corporation on the corporation's letterhead is not conclusive that he was acting in a representative capacity, if the alleged contract showed an intent to bind appellant individually. However, no such intent appeared either in the written contract, or in the evidence proffered by the appellees at trial.
471 Pa. at 48, 369 A.2d at 1188, (emphasis in original). We believe the above commentary is similarly appropriate in this case. The written contract consisted of a proposal sent to Electron by appellant Short on Purdy Engineers letterhead. The document set forth in extensive fashion the nature of the proposed services but notably spoke of these services being provided by Purdy Engineers. It also called for payment to be made to Purdy Engineers and at the end of the document on a line provided next to the word "agreed" the document was signed by the president of both companies and underneath their signatures their name and company name was typed. Nowhere in the document does the language reasonably suggest that Short would provide the services in an individual capacity or that Short was assuming personal liability for the contract. Indeed, Short's name does not appear anywhere in the text of the proposal.
In reaching its decision, the trial court focused on Short's failure to identify his relationship to Purdy in the signature block as creating doubt as to the capacity in which the contract was signed. However, the fact that his name was followed by Purdy's reasonably suggests that he was signing in behalf of Purdy, a conclusion that seems extremely difficult not to reach when the entire text of the document is read together. The trial court also found relevant evidence *569 that Short received $15,000.00 from the project's architect and that the sum was apparently paid to him directly. However, we do not find this evidence that probative of Short's capacity with respect to Electron Energy. Short's relationship with the architect was independent of his relationship with Electron. The mere fact that he may have undertaken performance of services as an individual for the architect cannot convert an otherwise corporate assumption of services with Electron into an individual one. Furthermore, there is nothing preventing an individual from changing capacities from one undertaking to another. Quite simply, we cannot view this fact as outweighing or countering the rather plain intent that must be gleaned from a reading of the document itself.
The other factor persuading the trial court to find Short personally liable under a breach of contract theory is § 2925 of the BCL. Title 15 Pa.C.S. § 2925 states:
(a) General Rule.  This subpart shall not affect the law of this Commonwealth applicable to the professional relationship and the contract, tort and other legal rights, duties and liabilities between the person furnishing professional services and the person receiving professional services and to the standards for professional conduct, including the law of this Commonwealth applicable to the confidential relationship, if any, between the person rendering professional services and the person receiving professional services, and all confidential relationships enjoyed under statutes heretofore or hereafter enacted shall remain inviolate.
(b) Liability unaffected.  Any officer, shareholder, employee or agent of a professional corporation shall remain personally and fully liable and accountable for any negligent or wrongful acts or misconduct committed by him or by any person under his direct supervision and control while rendering professional services on behalf of the corporation to the person for whom the professional services were being rendered....
*570 The trial court examined these provisions and concluded that to hold Short other than liable under the contract would be tantamount to allowing him to limit his liability relative to the provision of professional services. Of course, the trial court construed the above sections as designed to prevent this very occurrence. We cannot agree with this result either.
The express purpose of the section quoted above is to retain the individual personal liability of an officer, shareholder, employee or agent of a professional corporation for its negligent or wrongful acts. However, the section does not indicate that in finding such an individual personally liable the substantive elements of a cause of action are to be excused. Indeed, the language used seems to suggest a liability imposed in tort for negligent or wrongful acts, not liability imposed for breach of contract. In any event, the concept of using the corporate form to limit liability relates generally to limiting the assets subject to execution upon gaining a judgment to those of the corporation, rather than those of the individuals making up the corporation. Thus, generally one's potential loss is limited to the extent of one's capital participation in the corporation. It could be logically argued that a professional held liable for his negligent act will not be able to limit the assets available to satisfy a judgment by utilizing a corporate form.[1] It is one thing to indicate that a professional's liability will extend beyond the limitations of the corporation's assets and another thing altogether to allow liability to attach by excusing or eliminating long recognized elements of a cause of action. In other words, in expanding the scope of an individuals liability to scenarios it would not ordinarily attach. It *571 cannot be logically assumed that merely because the legislature indicated that a professional shall remain personally and fully liable for negligent acts the professional commits that the legislature meant to radically expand the basis of the professional's liability.
It is fundamental contract law that one cannot breach a contract that one is not a party to. In the present case Short was not a party to the contract, thus, he cannot be liable for a breach of it. This conclusion must be reached unless there is a basis for imposing the debt of the corporation upon Short. The language of the section does not indicate that an officer, shareholder, etc., is liable for the breach of contract by the professional corporation he belongs to.[2] Nor does it indicate that the corporate form is to be disregarded in considering contract actions, and we are reluctant to graft this meaning into the wording of the statute absent a clearer or more explicit expression of intent by the legislature.[3] The section explicitly refers to negligent or wrongful acts committed by the professional. If Short was a party to the contract and negligently fulfilled his obligations under it, liability may properly result from a breach of contract action because the negligent fulfillment of the obligations could be found to be a breach of the contract. However, we do not read the section in question to excuse formal proof of liability. If one is not a party to the contract, one cannot breach it. Therefore, liability for negligent or wrongful acts of a non-party to the contract would have to lie in tort. Here, Short was not sued in tort, thus, there is no basis to impose individual liability upon him. In this respect, we find the Commonwealth Court's decision in Commonwealth, Department of Transportation v. Upper Providence Township, 55 Pa. Cmwlth. 398, 423 A.2d 769 (1980), in general accord.
*572 In Upper Providence the township authority entered into a written contract with an engineering firm to perform engineering work related to the construction of a sewerage system. Later, problems developed in the system that resulted in a law suit. In discussing the individual liability of two of the engineers, (principals in the engineering firm), the court stated: "[a]s to the individuals, Gauker and Fridy, there is no basis to impose contractual liability with respect to the 1963 contract unless, notwithstanding the corporate entity of FG & F, personal liability can be imposed." The court went on to conclude that "the individuals, Fridy and Gauker, have no contractual liability to the Authority ..." The court did find that the Authority had successfully pled an action in trespass against Fridy and Gauker based upon allegations of negligence. It is unclear, despite the fact that the Upper Providence decision was rendered in 1980, whether, in reaching its decision, the Commonwealth Court considered the provisions of 15 P.S. § 2913(a), which is essentially the same section as is currently found at 15 Pa.C.S. § 2925(a). The Commonwealth Court did find relevant the fact that there were not provisions similar to those found at 15 P.S. § 12617 applicable to the engineers. Title 15 P.S. § 12617(b) stated: "[a]ll of the associates of a professional association are liable, jointly, for all debts and legal obligations of the association...." Apparently, in the opinion of the Commonwealth Court, had the legislature intended principals of a professional engineering corporation to be individually liable on the contractual obligations of the corporation they would have included a provision similar to that found at § 12617. We think this position has merit. The same provision still exists as to the principals of a professional association and can be found at 15 Pa.C.S. § 9317(b). The absence of it in § 2925 weakens the appellee's argument that professionals were meant to be held individually liable for a breach of contract by their professional corporation. We must conclude then, that they are not. Accordingly, it was error to find appellant Short liable for a breach of contract by Purdy Engineering.
*573 Appellants next contend that there was no competent evidence to establish that the need to replace a cooling tower was caused by design error or deficiency. We agree. This argument has two basic thrusts, one, that expert testimony was necessary to establish design error and explain the problem with the system, and, two, that the evidence admitted did not prove causation between design and malfunction. A review of the evidence reveals that with respect to this element of damage there was a dearth of evidence.
Mr. Walmer, president of Electron Energy, testified and indicated that when the project was completed they had two problems with the system almost immediately. First, the "electric coils that are water cooled were clogging." Which was related to the other problem, that a water pump was not working properly because air was getting in it. Although Mr. Walmer is a metallurgical engineer, he was never qualified as an expert witness on heating and cooling systems. Nor was anyone else, for that matter. No evidence was admitted that explained in any detail whatsoever why the system wasn't working and why it was designed in a deficient or negligent manner. In essence, appellee simply offered evidence that the system did not work properly when completed.
Although at first blush this showing might seem to be sufficient, what appears to have escaped the cognizance of appellee is that it did not contract to have a working system installed. The money paid Purdy was not for any of the equipment of the system or for the completed system itself. If such were the case it could be argued that there was an implied warranty that the system, as installed, would perform the functions it purported to provide. Then, the mere fact that the system did not work properly could be considered a breach of contract.
A review of the actual written contract reveals that what was promised was the provision of construction management services. Only through liberal reading does the actual *574 obligation to design a system surface.[4] Appellants correctly argue that it was necessary to establish design defect because no guarantees or warranties were extended regarding the functionability of the system. This is relevant because absent some form of expression as to how the system will function, a simple showing that the system did not work properly will not constitute a breach of the contract.
To the extent the contract is interpreted as obligating Purdy to design a heating and cooling system, a duty to design a system up to reasonable professional standards can be imputed. However, to establish a breach then, it would be necessary to establish that the design was not up to professional standards. This clearly was not done. No evidence was admitted that went into the design of Purdy's system and why it was deficient. The trial court suggests that no expert testimony was necessary, in part, because the court had a background in engineering. However, the rule of law regarding expert testimony calls for it when the matter before the fact finder involves skill and training beyond that of an ordinary layman. See, Reardon v. Meehan, 424 Pa. 460, 227 A.2d 667 (1967). There would seem to be little doubt that the questions that should have been put to the fact finder are beyond the scope of knowledge of the ordinary layperson. Thus, it would appear that expert testimony was essential to prove the elements of damage. We cannot conclude that the fact that the trial court, sitting as fact finder, possesses knowledge above that of the ordinary layman would not excuse the obligation to provide it. The rule states when the matter is beyond the experience of the ordinary layman expert testimony is necessary. Although the trial court's background certainly would have assisted him in understanding the testimony, his particular background cannot be found to lessen appellee's burden.
*575 The trial court also countered appellants' attack on this element of damages by indicating that they failed to object to the testimony offered by appellee's president and because they could have presented expert testimony in their own behalf. Although appellee's president testified without objection and has a background in metallurgical engineering, if expert testimony is considered necessary then these facts are of little regard. Even if Mr. Walmer's background qualified him as an expert, it was still necessary that he be offered as an expert and formally qualified as one, which was never done. Consequently, assuming that expert testimony was necessary, appellants failure to object would not be relevant until Mr. Walmer had been qualified. Thus, the fact that appellant did not object to his testimony seems of little significance to us. We similarly find the trial court's assertion that appellants had an equal opportunity to present expert testimony but chose not to, of little significance. Appellee sued appellants. Thus, it was appellee's burden to prove damages. Not appellants' burden to disprove damages. Appellants had absolutely no obligation to offer evidence to counter appellee's.
Appellants also argue that there was a lack of proof or improper measure of damages as to the heat exchange system. Again we must agree. The testimony as to the need for the addition of a heat exchange system was also rather sketchy. However, as best as can be gleaned from the testimony, it appears that part of the system in question utilized water from the overall plant heating and cooling system to cool the machinery. This system was characterized as a separate system but interconnected to the overall plant heating/cooling system. Apparently the water used in this system was not cooling off sufficiently to adequately cool the machinery. Through consultation with another individual appellee had a heat exchange system put in to assist in cooling the water. The cost of this system was $13,185.00 which the trial court awarded to appellee. Appellants argue that the cost of the system was an improper measure of damages. We agree. As above, with respect to *576 the heat exchange system, there was no showing that there was a specific design defect that necessitated the addition of a heat exchange system, and, more importantly, that a properly designed system would not have needed the heat exchanger. All that was established was that the system, as designed, was not adequately cooling the machinery. The manner in which the testimony is offered suggests as strongly as any other explanation that a properly designed system should have included such a heat exchange system. If such is the case then the cost of this item cannot be assessed against appellants because it represents a sum of money that should have been expended by appellee anyway. As indicated above, appellee did not contract for a completed system. It contracted for consulting services. The costs of building a properly designed system were always meant to be borne by appellee. If, because of poor design, money was spent that should not have been spent, then this would represent a proper measure of damages. For instance, if there were a $5,000.00 heat exchange system already in place that did not work and the cost of which could not be recovered or salvaged, then that $5,000.00 would be recoverable because the properly designed system would not have resulted in the wasted expenditure. Or, if the extra expenditure was necessitated solely because of design error, the cost would be properly recoverable. To the extent the system should have utilized a heat exchanger in the first instance, such costs are not properly recoverable. The testimony regarding the heat exchange system clearly did not establish the points necessary to charge appellants with the cost of the system.
Appellants last challenge the proof of damages as to the need for a replacement boiler. Appellee offered the testimony of a Mr. Richard Brownmiller to the effect that the boiler installed in the heating system as a supplemental heat source was of inadequate size to effectively heat the premises. Mr. Brownmiller has a substantial background in the heating field but does not have a mechanical engineering degree. Ironically, Mr. Brownmiller was qualified as an *577 expert in mechanical engineering. Appellants first argue that Mr. Brownmiller was improperly qualified as an expert and also argue that his testimony did not establish a design defect. Although certainly the offer of proof as to this element of damages would not constitute a model for how to prove damages, we are satisfied that it was sufficient for this purpose.
We question the propriety of qualifying Mr. Brownmiller as an expert in mechanical engineering when he did not even possess a degree in engineering. However, Mr. Brownmiller had some course work in mechanical engineering and had worked in the heating and cooling field for a number of years. Since his testimony was essentially limited to discussion of the heating system and the capacity of the boiler, we think he was qualified to express an opinion on these matters and that his testimony did not surpass his field of expertise. Furthermore, accepting the testimony that Mr. Brownmiller offered, we think it was adequate to support the claim for damages. Giving the benefit of all reasonable inferences to appellee as verdict winner the testimony offered by Mr. Brownmiller indicated that the plant was inadequately heated after colder weekends and that this was due to the fact that the supplemental boiler was not of a sufficient size to heat the plant without the assistance of the manufacturing process heat. Although this testimony was countered by appellants, apparently the testimony of Mr. Brownmiller was believed. As such, we think this element of damage was adequately proven.
For the above reasons the judgment entered against appellant Short is reversed, and judgment notwithstanding the verdict shall be entered in appellant Short's behalf. Additionally, as to appellant Purdy Engineers, Inc., the judgment must be modified to delete items of damage for the cooling tower, $22,183.02 and for the heat exchanger system, $13,185.00, which items of damage were not adequately proven. In all other respects the judgment is *578 affirmed and the verdict will be left undisturbed.[5]
Judgment reversed in part and affirmed in part. Remanded for proceedings consistent with this opinion. Jurisdiction relinquished.
WIEAND, J., files a concurring and dissenting statement.
WIEAND, Judge, concurring and dissenting:
I concur in the decision of the majority to reduce the amount of the judgment by $22,183.02 (the cost of replacing the cooling tower) and by $13,185 (the cost of a heat exchange system). However, I dissent from the majority's decision to enter judgment n.o.v. in favor of Edwin P. Short, Jr. I would hold that he was personally liable to appellee for reasons set forth in the opinion of the learned trial judge.
NOTES
[1] This would seem especially appropriate with regard to the professional individual who is individually incorporated. In such cases, if the services were regarded as provided by the corporate entity/individual and not by the professional individual personally, even a negligence action would seem unable to expose the individual to unlimited liability. We think the section in question answers such a situation by expressing the viewpoint that in those circumstances the services are rendered by an individual personally even if that individual is incorporated.
[2] Although such language is present relative to the associates of a professional association. See, 15 Pa.C.S. § 9317 and discussion infra.
[3] Of course, a corporation is regarded as a fictional entity that is separate in itself and has certain capabilities, one of which is the ability to contract.
[4] Although, notably, appellants never contend that Purdy was not obligated to design the system in question.
[5] We have also considered the challenge to two items of damages in the nature of excess costs incurred as a result of Mr. Short's unavailability and or design problems. We believe the trial court's opinion adequately covered these particular issues and affirm on the basis of that opinion.