

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-27-2004

# Ravotti v. Sunderland

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3770

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation
"Ravotti v. Sunderland" (2004). *2004 Decisions*. Paper 195.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/195

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 03-3770

ANTHONY J. RAVOTTI, an incapacitated person,
JANET G. RAVOTTI, guardian of his person

Plaintiff-Appellee

v.

RICHARD L. SUNDERLAND; LEE A. BIGLER, d/b/a/ BIGLER CONCRETE;
PENNSYLVANIA DEPARTMENT OF TRANSPORTATION; PENNSYLVANIA
TURNPIKE COMMISSION; NEW ENTERPRISES STONE & LIME COMPANY,

Defendants

NEW ENTERPRISES STONE & LIME COMPANY,

Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
(Civil Action No. 00-49J)
District Judge: Hon. David S. Cercone

Argued: September 23, 2004

Before: McKEE, ALDISERT and GREENBERG, *Circuit Judges*

(Opinion filed: October 27, 2004)

MICHAEL LOUIK (Argued)
Meyers, Rosen, Louik & Perry
200 Frick Building
Pittsburgh, PA 15219
Attorney for Ravotti's

PAUL V. ESPOSITO (argued)
Clausen Miller
10 South LaSalle Street
Suite 1600
Chicago, IL 60603
Attorney for New Enterprises Stone & Lime Company

OPINION

McKEE, Circuit Judge.

New Enterprises Stone and Lime Company ("NE") appeals the district court's denial of its motion for judgment as a matter of law ("JMOL") or a new trial. For the reasons that follow, we will affirm.

## I.

Because we write only for the parties, it is not necessary to recite the facts or procedural history of this case except insofar as may be helpful to our brief discussion.

NE first contends that the district court erred in not requiring plaintiff to offer expert testimony as to both the scope of NE's alleged duty to properly instruct truck drivers and the relevant standard of care in the highway construction and trucking industry. NE rests its argument in large part upon *Young v. Pennsylvania Dept. of Trans.*, 744 A.2d 1276 (Pa. 2000).

The issue in *Young* was "whether expert testimony is necessary to ascertain if warning signs should be placed three miles away from a construction site on an interstate

2

highway." *Id*. at 1277. The case involved a car accident in which plaintiff's husband was killed when he struck a median while attempting to avoid stopped traffic. *Id*. There, plaintiff contended that PENNDOT was negligent for failing to properly place advance warning signs, but the Pennsylvania Supreme Court affirmed the trial court's grant of summary judgment in favor of the defendant. *Id*. at 1279. In doing so, the court first reviewed the standards for expert testimony under Pennsylvania law stating:

> Expert testimony is often employed to help jurors understand issues and evidence which is outside of the average juror's normal realm of experience. We have stated that, "[t]he employment of testimony of an expert rises from necessity, a necessity born of the fact that the subject matter of the inquiry is one involving special skill and training beyond the ken of the ordinary layman. *Reardon v. Meehan*, 424 Pa. 460, 227 A.2d 667, 670 (1967). Conversely, "[I]f all the primary facts can be accurately described to a jury and if the jury is as capable of comprehending and understanding such facts and drawing correct conclusions from them as are witnesses possessed of special training, experience or observation, then there is no need for the testimony of an expert."

*Id*. at 1278. The court stated that "lay witnesses are [not] able to impart sufficient knowledge to jurors regarding the many variables which are required to establish the existence of a legal duty to place signs over three miles away from a construction zone." *Id.*

However, *Young* provides little support for NE's position here. In *Young*, the lay witnesses who were not competent to testify about the Commonwealth's legal duty were the other drivers in the traffic jam. Here, the evidence included testimony from experienced truck drivers, construction site managers and other professionals in the construction field. The jury [was as] . . . capable of comprehending and understanding

3

[that testimony] and drawing correct conclusions from [it]. . . . [Thus,] there [was] no need for the testimony of an expert." NE was, after all, hiring independent truckers to haul material away from its construction site to be "dumped" elsewhere. Jurors could certainly understand the need for the truckers to know where they were going and how to get there without relying on an expert.

NE next argues that the traffic pattern in the construction zone was not confusing and that it did not cause Sunderland to stop in a live lane. In asserting this claim, NE merely reargues the evidence that was before the jury. In fact, at oral argument, NE's counsel asked us to find that, "as a matter of law," the roadway was clean and clear enough to avoid any confusion. However, at trial, both sides presented evidence regarding the traffic pattern at the construction site. Based on our review of the record we believe there was sufficient evidence to establish that roadway confusion was negligently created by NE, and that it was a contributing factor in the accident. Thus, having found sufficient evidence to support a jury verdict on these grounds, we cannot rule as a matter of law that NE was entitled to a verdict in its favor.

NE also asks us to find that the district court erred in admitting a Gannett Fleming, Inc. ("GFI") memo, which potentially supported plaintiff's theory that, on the night of the accident, NE should have restricted the eastbound lane of the turnpike to one lane. Specifically, the GFI memo stated that the Pennsylvania Turnpike Commission "directed that the single lane pattern be extended full length through the approaches of Bridge B-

4

445." (emphasis in original). NE contends that, because the GFI memo lacked a proper foundation, the district court erred in admitting the memo as a business record. NE argues that the critical statement in the memo was inadmissible because it was offered to establish the truth of the Commission's alleged requirement extending the lane closure. NE also contends that "the business record exception does not embrace statements contained within a business record that were made by one who is *not* a part of the business if the embraced statements are offered for their truth." *United States v. Vigneau*, 187 F.3d 70, 75 (1st Cir. 1999) (emphasis in original).

Although we agree that the disputed statement in the memo was improperly admitted, we conclude that the error was harmless because other evidence negated the impact of this memo. That testimony included evidence that, following GFI's submission of the memo to NE, and prior to finalizing the plans for the construction site, GFI met with the Commission and "[a]greement was reached that the lane would be closed only when NE simultaneously conducted bridge and pavement repair work . . . [and] when simultaneous work was not ongoing, the lane should remain open." The subsequent agreement negated the memo's critical statement. The jury also heard evidence that the "approaches" mentioned in the memo "would be those approaches that lead up to the bridge." The accident happened about 700 feet beyond the bridge. Therefore, the disputed statement in the memo did not even pertain to the accident area.

NE next contends that it should be "released . . . from liability" because

5

Sunderland's "unforeseeable," "highly extraordinary" and "abnormal" conduct in stopping his truck in a live lane of traffic, along with the speed at which Ravotti was traveling prior to the accident, "were the only substantial factors causing the accident." However, NE's argument is against the weight of Pennsylvania authority. *See Powell v. Drumheller*, 539 Pa. 484, 493, 653 A.2d 619, 623 (1995).

The plaintiff in *Powell*, alleged that "the accident [in which her husband was killed] was caused by two concurring causes: (1) the negligent driving of [co-defendant] under the influence of alcohol and (2) the negligent design and maintenance of the Commonwealth highway which prevented Mr. Powell from taking action to avoid the accident." *Id.* at 492. The Pennsylvania Supreme Court had to decide "whether the criminally negligent conduct of [a] co-defendant . . . in driving under the influence of alcohol is a superceding cause relieving PENNDOT of liability for negligently designing a Commonwealth highway." *Id.* at 488. The court concluded that was a jury question and would not "as a matter of law [conclude] that [co-defendant's] conviction for driving under the influence was a superceding cause." *Id.* at 495.

Similarly, the parties here presented various theories of causation and, as in *Powell*, the district court correctly allowed the jury to assess fault and to decide if the behavior of Sunderland or Ravotti was sufficiently "extraordinary to constitute a superseding cause." We cannot conclude, as a matter of law, that the jury's determination was in error.

6

NE next maintains that the district court abused its discretion in allowing testimony regarding Exhibit 73. Exhibit 73 is a document created by NE's risk manager, William Carr, during his investigation of the accident. It contains a specific notation by Carr of an employee's comment that the speed limit at the time of the accident was 55 mph. While questioning Carr on rebuttal about his purpose in preparing Exhibit 73, plaintiff asked:

> All of these people that you spoke with to get this information in order to discharge your duties as a risk manager, as well as your contractual obligations that you say that you owed to the insurance company, you spoke to [NE] employees, isn't that right?

Supp. App. At 955. Additionally, in earlier testimony, plaintiff had cross-examined defense expert Walter Kilareski, and asked him if he had been given Exhibit 73 during or after preparation of his expert report. Kilareski responded that he had not seen the report before. In his report, Kilareski concluded that the speed limit was 40 mph. According to NE, Exhibit 73 was irrelevant, its introduction prejudiced NE because plaintiff used it to elicit information about insurance, and plaintiff improperly used it to portray NE as an evildoer that withheld important documents from its expert.

We disagree with each of these contentions. First, as plaintiff points out, Exhibit 73 was relevant because NE and Sunderland "defended this case by claiming that Ravotti was guilty of contributory negligence for, *inter alia*, driving in excess of an alleged 40 mph speed limit at the accident scene . . . [and] Ravotti attempted to meet Defendants' arguments concerning Ravotti's speed by showing that, for various reasons, one could

7

have easily been confused as to the speed." Appellee's Br. at 20-1. Second, the introduction of Exhibit 73 was consistent with Fed. R. Evid. 411, which states:

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

Although plaintiff did not offer Exhibit 73 specifically to show "proof of agency, ownership, or control or bias or prejudice of a witness," under *Posttape Assoc. v. Eastman Kodak Co.*, 537 F.2d 751, 758 (3d Cir. 1976), so long as "the evidence is offered for other relevant purposes [i.e. other than the inference that a party acted negligently], it may be admitted." Exhibit 73 was relevant to the issue of the speed limit and the passing reference to "the insurance company" did nothing more than explain why the witness was asking NE's employees questions about the accident. The questioning also served the permissible purpose of challenging the accuracy of Kilareski's expert report.

Finally, NE argues that the district court abused its discretion in instructing the jury regarding 67 Pa. Code § 601.6 [prohibiting non-emergency stops in specific sections of Turnpike] and 75 Pa. C.S. § 3362 [posting of speed limits]. However, even if we assume that the court's instruction was erroneous, we would nevertheless view the error as harmless. There was sufficient evidence at trial, unrelated to these traffic laws, to allow the jury to assess the parties' conflicting positions concerning the speed limit and to support the jury's apportionment of fault.

8

## III.

For the foregoing reasons, we will affirm the district court's judgment.