# Pitzer v. PennDOT

*Philip L. Clark Jr.,* for petitioner.
*Chester Karas,* for respondent.

PICCIONE, *J.,* September 14, 2006—This opinion is issued pursuant to Timothy J. Pitzer's (petitioner) appeal of the suspension of his driver's license by the Pennsylvania Department of Transportation (PennDOT) due to a violation of section 1547 of the Pennsylvania Motor Vehicle Code. (See 75 Pa.C.S. §1547.)

Petitioner was involved in a one-car motor vehicle accident sometime late night on February 5, 2006, or early morning February 6, 2006. When the police arrived at the scene of the accident, the petitioner was transported to a hospital for an evaluation and a chemical test. However, during transit to the hospital, the petitioner exited the police car and unsuccessfully attempted to flee the officers and, once at the hospital, subsequently refused to consent to a chemical blood test. Petitioner received notice on or about March 20, 2006 that his driver's license was to be suspended on April 24, 2006 for 12 months due to his violation of 75 Pa.C.S. §1547.

Petitioner's medical expert, Lawrence A. Fazioli M.D. testified that "it was within reason that" the head injury sustained by petitioner in the motor vehicle accident on the night in question "could have—would have led him to not making a choice or affecting his ability to make reasonable choices." (Fazioli deposition 06-14-2006 p. 12.) Dr. Fazioli based this opinion on several factors and

indicated that his opinion was to a reasonable degree of medical certainty. (Fazioli deposition 06-14-2006 p. 12.) One of the considered factors was the fact that petitioner was unable to recall some of the events pertaining to the time around the accident during the February 8, 2006 examination with Dr. Fazioli. (Fazioli deposition 06-14-2006 pp. 6, 7, 14.) Dr. Fazioli stated that, in rendering the opinion he relied upon a conversation with Ram Tata M.D., a neurologist. (Fazioli deposition 06-14-2006 p. 8.) Dr. Fazioli indicated that his conversation with Dr. Tata is typical of one of the methods Dr. Fazioli employs to obtain information that he relies upon in forming a diagnosis and prognosis of his patients. (Fazioli deposition 06-14-2006 p. 8.) The court notes that Dr. Fazioli did not examine the petitioner until February 8, 2006, approximately two days after the relevant accident occurred. (Fazioli deposition 06-14-2006 p. 13.) Dr. Fazioli further indicated that petitioner's attempt to escape from the police on the night in question could have been indicative of petitioner's ability to make a reasoned decision to flee in order to avoid possible repercussions, or a reflection of petitioner's confusion as a result of the trauma. (Fazioli deposition 06-14-2006 p. 14.)

Pennsylvania law states that:

"Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood, or the presence of a controlled substance, if a

police officer has reasonable grounds to believe the person to have been driving, operating, or in actual physical control of the movement of a vehicle . . . ." 75 Pa.C.S. §1547(a)(2005).

That section goes on to state:

"If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted, but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

"Except as set forth in subparagraph (ii), for a period of 12 months." *Id.* at section 1547(b)(1)(i).

In order for a suspension to be upheld, the Commonwealth must establish that the driver: (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to chemical testing; (3) refused to submit to the requested chemical testing; and, (4) was specifically warned that refusal would result in the revocation of their driver's license. See *PennDOT v. Ingram,* 538 Pa. 236, 648 A.2d 285 (1994). When the Commonwealth is able to satisfy its burden for each of the aforementioned elements, the burden of proof is shifted to the licensee, who must attempt to establish that he was not capable of making a conscious refusal to submit to chemical testing. For instance, in the instant case, the petitioner must present competent medical evidence to support his claim that he was incapable of making a knowing and conscious refusal to submit to chemical testing. *Ostermeyer v. PennDOT,* 703 A.2d 1075 (Pa. Commw. 1997). However, the trial court must

affirm a factual finding that the licensee possessed the capability to make a conscious refusal if there is sufficient evidence supporting that position within the record. See *Barbour v. PennDOT,* 557 Pa. 189, 732 A.2d 1157 (1999). The applicable standard for medical testimony in license suspension appeals is the standard of a "reasonable degree of medical certainty." See *id.* Pursuant to the laws of this Commonwealth, the factfinder is free to accept or reject the credibility of both lay and expert witnesses. *Gunn v. Grossman,* 748 A.2d 1235, 1240 (Pa. Super. 2000), citing *Gaydos v. Gaydos,* 693 A.2d 1368 (Pa. Super. 1997).

The determination of whether an expert witness' testimony is credible was enunciated by this Commonwealth's Supreme Court, which stated:

"The employment of testimony of an expert rises from necessity, a necessity born of the fact that the subject matter of the inquiry is one involving special skills and training beyond the ken of the ordinary layman: [citations omitted] . . . The qualifications of this witness and the competency of his testimony, to a considerable extent, were matters within the discretion of the court below." *Reardon v. Meehan,* 424 Pa. 460, 465-66, 227 A.2d 667, 670-71 (1967); see *Cooper v. Metropolitan Life Insurance Co.,* 323 Pa. 295, 301, 186 A. 125 (1936); *Stevenson v. East Deer Township,* 379 Pa. 103, 106, 108 A.2d 815, 816 (1954).

"In a subsequent opinion, the Pennsylvania Supreme Court held that expert witnesses in their testimony could properly rely upon information whose sources could not be proved in court:

"[T]he opinion[s] of expert witnesses must invariably rest, at least in part, upon sources that can never be proven in court. An expert's opinion is derived not only from records and data, but from education and a lifetime of experience. Thus, when the expert witness has consulted numerous sources, and uses that information, together with his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not as hearsay in disguise." *Commonwealth v. Daniels,* 480 Pa. 340, 347-48, 390 A.2d 172, 176 (1978) (quoting *United States v. Williams,* 447 F.2d 1285, 1290 (5th Cir. 1971) (en banc), *cert. denied,* 405 U.S. 594, 92 S.Ct. 1168, 31 L.Ed.2d 231 (1972)).

The outstanding issues for disposition in this matter is whether the testimony presented by petitioner's expert that petitioner's refusal was not knowing and conscious was admissible and, if admissible, whether such testimony was credible. Specifically, Dr. Fazioli testified in his deposition that he relied upon statements made to him in a conversation with Dr. Tata that enabled Dr. Fazioli to form the opinion that petitioner was incapable of rendering a knowing and intelligent refusal of the proposed chemical test on February 6, 2006. (See Fazioli deposition 06-14-2006 p. 8.) The court notes that the record indicates Dr. Tata had examined the petitioner prior to the conversation between Dr. Tata and Dr. Fazioli. (See Fazioli deposition 06-14-2006 p. 7.) The court finds that Dr. Fazioli relied upon the statements made by Dr. Tata in Dr. Fazioli's diagnosis of petitioner and his expert opinion that the petitioner's refusal to submit to a blood test was not knowing and conscious.

(See Fazioli deposition 06-14-2006 p. 8.) Therefore, this court finds that it was proper for Dr. Fazioli to use the information obtained via his discussion with Dr. Tata as a component of his expert opinion. See *Daniels,* 480 Pa. at 347-48, 390 A.2d at 176.

The court finds that the Commonwealth met its initial burden establishing all of the elements necessary to make a prima facia case that the petitioner was arrested for driving under the influence of alcohol; was asked to submit to chemical testing; refused to submit to the requested chemical testing; and, was specifically warned that refusal would result in the revocation of their driver's license, thereby shifting the burden to petitioner to establish that his refusal was not knowing and conscious. See *Ingram,* 538 Pa. 236, 648 A.2d 285. The court further finds that testimony given by petitioner's medical expert witness is within the requisite standard of a reasonable degree of medical certainty. See *Barbour,* 557 Pa. 189, 732 A.2d 1157. This court further accepts Dr. Fazioli's testimony as credible. See *Reardon,* 424 Pa. at 465-66, 227 A.2d at 670-71; see also, *Cooper* at 301; *Stevenson* at 106. Therefore, this court finds that the defendant has met his burden and established that his refusal to submit to chemical testing was not knowing or intelligent. See *Ostermeyer,* 703 A.2d 1075. The court finds that the Commonwealth has not presented evidence that effectively contradicts the opinion rendered by petitioner's medical expert. Accordingly, the court finds that the Commonwealth has not presented sufficient evidence to establish that the petitioner possessed the capability to make a conscious refusal to submit to a blood test. See *Barbour,* 557 Pa. 189, 732 A.2d 1157. Therefore, peti-

tioner's petition for appeal from order of PennDOT suspending operator's license is granted.

## ORDER

And now, September 14, 2006, the court, having held a hearing June 29, 2006 on petitioner's appeal from order of PennDOT suspending operator's license, with Phillip L. Clark Jr., Esquire, appearing and representing the petitioner, and Chester Karas, Esquire, appearing and representing the respondent, the court hereby orders and decrees as follows:

(1) Pursuant to the attached opinion, petitioner's petition for appeal from order of PennDOT suspending operator's license is granted.

(2) The prothonotary shall serve notice of this order upon PennDOT and counsel of record for the parties, and if a party has no counsel, then upon said party at their last known address as contained in the court's file.