J-A20010-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| DARRIN ULMER, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| L.F. DRISCOLL COMPANY AND | : | |
| LLOCSIRD, INC. D/B/A LF DRISCOLL | : | |
| COMPANY AND J.J. DON, INC. D/B/A | : | |
| L.F. DRISCOLL COMPANY, | : | |
| | : | |
| Appellees | : | No. 2841 EDA 2013 |

Appeal from the Order September 24, 2013,
Court of Common Pleas, Philadelphia County,
Civil Division at No. October Term, 2009 No. 3603

BEFORE:  DONOHUE, SHOGAN and WECHT, JJ.

MEMORANDUM BY DONOHUE, J.:                **FILED AUGUST 17, 2015**

Appellant, Darrin Ulmer ("Ulmer"), appeals following the trial court's entry of a nonsuit at the close of his case-in-chief at trial.  In this appeal, Ulmer challenges the entry of the nonsuit as well as other procedural and evidentiary rulings favoring Appellees, L.F. Driscoll Company et al. ("Driscoll") and Philadelphia D&M, Inc. ("D&M").  For the reasons that follow, we reverse and remand for a new trial.

Ulmer's employer, ThyssenKrupp Elevator Corporation ("ThyssenKrupp"), was a subcontractor hired to build the elevators in the new Comcast Center in Philadelphia.  Throughout the pendency of the construction project, ThyssenKrupp had moved elevator doors to upper floors in a horizontal position by two methods:  an exterior hoist and service

elevators located in the building's garage and basement staging area. During the later stages of construction, these options became unavailable and Driscoll, the construction manager/general contractor, directed ThyssenKrupp to store the latest shipment of elevator doors in the high-rise elevator lobby. In this location, space limitations required the elevator doors to be stacked vertically. Approximately one month prior to the events in question here, D&M, another subcontractor, had at Driscoll's instruction covered the granite floor of the high-rise elevator lobby with a temporary protective floor covering called Correx. On October 25, 2007, Ulmer, along with coworkers Robert Donsky ("Donsky") and Daniel Dubeck ("Dubeck"), were tasked with moving elevator doors to upper floors of the building for installation. Because the elevator doors had been laid vertically, Ulmer, Donsky and Dubeck had to raise the doors to a horizontal position as they were loaded onto a cart for transportation. When Ulmer began tilting one elevator door, the bottom of it "kicked out" and fell to the ground, injuring Ulmer.

On October 23, 2009, Ulmer commenced this negligence action against Driscoll, and on May 23, 2011, Driscoll joined D&M as a third party defendant. Prior to trial, Driscoll filed several motions in limine, including motions (1) to preclude Ulmer from introducing any evidence relating to the lack of availability of the exterior hoist, and (2) to preclude Ulmer's expert

witness from testifying about Correx. The trial court granted both of these motions in limine.

On January 23, 2013, at the close of Ulmer's case-in-chief at trial, the trial court granted Driscoll's motion for a nonsuit pursuant to Rule 230.1 of the Pennsylvania Rules of Civil Procedure, on the ground that Ulmer failed to establish the elements of a negligence claim against Driscoll. On February 4, 2013, Ulmer filed a motion to remove the nonsuit, but the trial court, per the Honorable Judge Gary Francis Di Vito, did not issue any ruling. Accordingly, on September 24, 2013, Ulmer filed a praecipe for entry of judgment, and two days later instituted this appeal. In response, Judge Di Vito did not issue an order pursuant to Rule 1925 of the Pennsylvania Rules of Appellate Procedure. After Judge Di Vito's retirement from the bench, this case was assigned to the Honorable Judge Annette M. Rizzo, who issued an order pursuant to Rule 1925(a) and subsequently filed a written Rule 1925(a) opinion supporting Judge Di Vito's rulings.

On appeal, Ulmer presents five issues for our review and consideration:

> 1. Did the trial court err as a matter of law or abuse its discretion when, after ruling pretrial that [Ulmer] could pursue a direct claim against [D&M], nine days into the presentation of the case to a jury[,] the trial court reversed course and sua sponte precluded [Ulmer] from pursuing such a direct claim?
>
> 2. Did the trial court commit legal error when it granted a nonsuit in favor of [Driscoll], which had introduced

evidence in support of its affirmative defenses in [Ulmer's] case-in-chief, in violation of the rule of Pennsylvania law that a nonsuit may not be entered in favor of a defendant that introduces evidence in support of its defenses during plaintiff's case?

3.    Viewing all of the evidence actually admitted and before the jury for its consideration at trial in the light most favorable to [Ulmer], did the trial court err or otherwise abuse its discretion in granting a nonsuit in favor of [] Driscoll on the basis that [Ulmer] had failed to introduce sufficient evidence for the jury to find that Driscoll's negligence in directing that the elevator doors be staged and moved on Correx and in violating industry practices and standards resulting in Ulmer's being placed in harm's way[,] was the factual and legal cause of [Ulmer's] injuries?

4.    Did the trial court err or otherwise abuse its discretion in preventing [Ulmer] from introducing evidence that [] Driscoll had removed or prevented [Ulmer] from using every previously available safe means of access for staging and transporting elevator doors to higher floors of the building, which evidence had it been admitted would have unquestionably raised a jury question concerning whether Driscoll's negligence was the factual and legal cause of [Ulmer's] injuries?

5.    Did the trial court err as a matter of law or abuse its discretion when it prohibited [Ulmer's] liability expert, who had 54 years of experience and training in the construction industry relating to the moving and staging of heavy materials and temporary protective floor coverings, from offering any testimony to establish that Driscoll's negligence was the factual and legal cause of [Ulmer's] injuries?

Ulmer's Brief at 3-4.[1]

---

[1]    The issues have been renumbered for ease of disposition.

For his first issue on appeal, Ulmer claims that the trial court erred in reversing its prior ruling and denying him leave to file a direct claim against D&M. *Id.* at 63. D&M responds that a direct claim was barred by the applicable statute of limitations. D&M's Brief at 7. In a reply brief, Ulmer argues that Rule 2255(d) of the Pennsylvania Rules of Civil Procedure authorized the filing of a direct claim against D&M. Ulmer's Reply Brief at 27-28.

Under Rule 2255(d), a plaintiff may recover directly from an additional defendant when the facts established at trial show that the additional defendant is liable to him or her either solely or jointly with the original defendant. *Ribnicky v. Yerex*, 701 A.2d 1348, 1351 (Pa. 1997); *Sheriff v. Eisele*, 112 A.2d 165, 166 (Pa. 1955). *202 Island Car Wash, L.P. v. Monridge Construction, Inc.*, 913 A.2d 922, 927 (Pa. Super. 2006); *Moscatiello v. Pittsburgh Contractors Equipment Co.*, 595 A.2d 1198, 1203 (Pa. Super. 1991). Rule 2255(d) does not apply, however, when the applicable statute of limitations for the plaintiff to file suit has run at the time the third party defendant is joined to the action. *Wnek v. Boyle*, 96 A.2d 857, 858 (Pa. 1953); *Dickson v. Lewandowski*, 323 A.2d 169, 171 (Pa. Super. 1974) (where the statute of limitations had run, "Entry of judgment against both defendants on the verdict was proper, but that judgment may not be enforced by the plaintiffs against the additional

defendant."); ***Richards v. Alston***, 553 A.2d 488, 490-91 (Pa. Cmwlth. 1989).

On appeal, Ulmer insists that the trial court, by permitting Driscoll to assert third-party claims against D&M, "already rejected [D&M's] assertion that those claims were untimely." Ulmer's Reply Brief at 29-30. In at least two cases, however, ***Oviatt v. Automated Entrance System Co., Inc.***, 583 A.2d 1223 (Pa. Super. 1990) and ***Hughes v. Pron***, 429 A.2d 9 (Pa. Super. 1981), this Court has rejected the argument that the statute of limitations in the underlying tort action has any effect upon a defendant's ability to add third-party defendants. In ***Oviatt***, for example, the additional defendant argued that it could not be joined because the statute of limitations for a direct suit by plaintiff had expired. We disagreed, indicating that the statute of limitations applicable to the plaintiff's underlying claim against the additional defendants has no effect on the original defendant's ability to enforce a contribution claim against them. ***Oviatt***, 583 A.2d at 1227. We did so because contribution is not a recovery for the tort committed against the plaintiff, but rather is "the enforcement of an equitable duty to share liability for the wrong done." ***Id.***

In the trial court, Ulmer claimed that the applicable two-year statute of limitations for negligence actions, 42 Pa.C.S.A. § 5524, had not expired when he sought leave to file a direct claim because it had been tolled by the discovery rule. Motion for Leave to Assert a Direct Cause of Action,

1/2/2013, at 6. Because Ulmer has not raised (or even mentioned) the discovery rule on appeal, however, this argument is waived. ***See, e.g.***, ***Commonwealth v. Perez***, 93 A.3d 829, 841 (Pa. 2014). Because a plaintiff may not add a new defendant after the statute of limitations has run, ***Anderson Equip. Co. v. Huchber***, 690 A.2d 1239, 1241 (Pa. Super. 1997), and because on appeal Ulmer has not proffered any basis for us to conclude that the statute of limitation had not expired at the time he sought to assert a direct claim against D&M, we find no error in the trial court's January 16, 2013 order denying Ulmer's motion for leave to add D&M as an additional defendant.

While Ulmer contends that he was prejudiced by the trial court's January 16, 2013 order reversing its prior January 9, 2013 order granting the motion for leave, he cites to no authority to support the position that any such prejudice prevented the trial court from issuing the later order. To the contrary, D&M persuasively argues that it would have likewise been prejudiced if the trial court had not corrected its January 9, 2013 order that erroneously permitted the filing of a direct claim beyond the expiration of the statute of limitations. D&M's Brief at 10-11. As a result, no relief is due on this issue.

For his second issue on appeal, Ulmer argues that the trial court committed reversible error by granting a nonsuit even though Driscoll introduced evidence in Ulmer's case-in-chief in support of its affirmative

defenses. Ulmer's Brief at 30. Relying on **Commonwealth v. Harnish**, 732 A.2d 596 (Pa. 1999), Ulmer contends that the trial court "lacked the legal authority" to enter a nonsuit pursuant to Pa.R.C.P. 230.1. **Id.** at 32.

The rule applied in **Harnish** was amended to eliminate its application in future cases. The version of Rule 230.1 applied in **Harnish** provided that nonsuit could only be considered "before any evidence on behalf of the defendant has been introduced." In 2001, however, our Supreme Court amended Rule 230.1 to remove this language and to provide instead that "the court in deciding a motion for compulsory nonsuit will consider only evidence that was introduced by the plaintiff and any evidence favorable to the plaintiff introduced by the defendant prior to the close of the plaintiff's case." Pa.R.C.P. 230.1(a)(2). The explanatory comment to the 2001 amendment specifically referenced **Harnish** and made clear that henceforth "if the defendant presents evidence prior to the close of the plaintiff's case, the court shall consider, in addition to the plaintiff's evidence only that defense evidence which is 'favorable to the plaintiff.'" Pa.R.C.P. 230.1 (2001 Explanatory Comment); **see also Alfonsi v. Huntington Hosp., Inc.**, 798 A.2d 216, 220 n. 3 (Pa. Super. 2002) (stating that the new rule permits a court to consider a nonsuit even after the defendant has introduced

evidence); ***Brodowski v. Ryave***, 885 A.2d 1045, n. 3 (Pa. Super. 2005) (same).[2]

Accordingly, Rule 230.1 no longer prohibits the entry of a nonsuit where the defendant introduces evidence during the plaintiff's case-in-chief, so long as the trial court considers only the defense evidence that is favorable to the plaintiff. We note that Ulmer appears to have conceded this point, as in his reply brief he offered no response to Driscoll's arguments regarding the post-***Harnish*** amendment to Rule 230.1.

For his third issue on appeal, Ulmer asserts that the trial court erred in entering a nonsuit at the close of his case-in-chief and in refusing to remove the nonsuit upon the filing of a motion to do so. Ulmer's Brief at 33. In her Rule 1925(a) opinion in support of Judge Di Vito's ruling, Judge Rizzo concluded that the evidence Ulmer introduced at trial demonstrated only that an accident happened, and left the jury "to speculate as to causation between an action of [Driscoll] and [Ulmer's] injuries." Trial Court Opinion, 9/5/2014, at 14.

An order denying a motion to remove a nonsuit will be reversed on appeal if the trial court abused its discretion or committed an error of law.

---

[2] Note that in a 2012 case, ***Keffer v. Bob Nolan's Auto Service, Inc.***, 59 A.3d 621, 631-32 (Pa. Super. 2012), this Court appeared to cite ***Harnish*** with approval in deciding a nonsuit issue. While this decision probably should not have cited to pre-amendment authority, it nevertheless found that a nonsuit had properly been entered and thus did not apply the ***Harnish*** rule.

***Kovalev v. Sowell***, 839 A.2d 359, 368 (Pa. Super. 2003); ***Kuriger v. Cramer***, 498 A.2d 1331, 1335 (Pa. Super. 1985). Nonsuit is proper where the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action, and it is the duty of the trial court to make a determination prior to submission of the case to a jury. ***Poleri v. Salkind***, 683 A.2d 649, 653 (Pa. Super. 1996). The plaintiff must be given the benefit of every fact and every reasonable inference arising from the evidence, and all conflicts in evidence must be resolved in plaintiff's favor. ***Eiser v. Brown & Williamson Tobacco Corp.***, 2006 WL 933384, at *5 (Pa. Super. Jan. 19, 2006). As indicated hereinabove, pursuant to Rule 230.1, if the defendant has introduced evidence, the trial court, in ruling on a motion for a nonsuit, will consider the defendant's evidence only if it is favorable to the plaintiff. ***Alfonsi***, 798 A.2d at 218 n.3.

In this case, the issue turns on whether Ulmer introduced sufficient evidence to establish a causal link between Driscoll's actions and his injuries. Causation is normally a question of law for the jury to decide, and it should be taken away from the jury only when reasonable minds could not differ. ***Hamil v. Bashline***, 392 A.2d 1280, 1284 (Pa. 1978). In our view, reasonable minds could certainly differ with respect to whether Ulmer's injury was caused by Driscoll's decision to have ThyssenKrupp store the elevator doors (vertically) in the high-rise elevator lobby where the granite floor had been covered with Correx panels, and whether Ulmer's accident

was the result of a failure of the Correx panels. Giving Ulmer the benefit of every fact and every reasonable inference arising from the evidence, the jury could have understood the testimony of Matthew Lilly ("Lilly"), a corporate representative of D&M, to establish: (1) that Driscoll ordered D&M to install Correx on the granite floor of the high-rise elevator lobby; (2) that Correx is not an appropriate floor covering for heavy materials, as it lacks "the proper integrity" for heavy materials, and it is instead commonly used for lightweight circumstances (e.g., to prevent wear from foot traffic); (3) that the Correx panels installed in the high-rise elevator lobby had a significant failure rate, requiring the replacement of 30 of the 120 panels placed there; and (4) that when staging and moving heavy objects, plywood should be placed on top of the Correx. N.T., 1/15/2013 PM, at 15-16, 26-29, 41-42, 53-54, 66-70, 86-88.

Likewise, the testimony of Ulmer, Donsky, and Dubeck provided the jury with information regarding what happened at the time of the accident, including Ulmer's testimony that "it felt like the whole floor gave way." N.T, 1/17/2013 PM, at 15. Donsky testified that he felt the floor move, and that he could feel the vibrations of the floor ("I felt the thing vibrate, like the floor, you know, I felt it. It moved."). N.T., 1/14/2013 PM, at 67. When asked what caused Ulmer's injuries, Donsky said, "I think it was the flooring, yes." *Id.* at 84. Similarly, Dubeck testified that he heard the floor move, and it sounded "like a scraping noise." N.T, 1/14/2013 AM, at 62, 64.

- 11 -

These fact witnesses, along with Kelly Longo ("Longo"), the ThyssenKrupp supervisor at the scene, also provided their observations of the Correx panels before and after the accident, including that after the accident (unlike before it) they could see gouge marks in the Correx. N.T., 1/11/2013 AM, at 68-69. Longo, among others, testified that the Correx panels were slippery. *Id.* at 61.

Based upon this evidence, Ulmer presented sufficient evidence to submit the issue of causation to the jury, which could have concluded (even without substantial testimony from Ulmer's expert) that Correx was an improper floor covering for the work Driscoll directed ThyssenKrupp's employees to perform at that location, and that Ulmer's injuries were caused by a foreseeable failure of the slippery Correx panels. As a result, the trial court erred in entering, and refusing to remove, the nonsuit against Ulmer, and we must therefore reverse the entry of judgment and remand for a new trial.

Because we are remanding this case for a new trial, we must address the propriety of the trial court's grants of two motions in limine filed by Driscoll prior to the first trial. For his fourth issue on appeal, Ulmer contends that the trial court erred in granting Driscoll's motion in limine to exclude all evidence relating to the lack of availability of an exterior hoist to transport elevator doors at the time of Ulmer's accident. Ulmer's Brief at 52-55. According to Ulmer, Driscoll's decision to store the elevator doors in the

high-rise elevator lobby was a proximate cause of his injuries, as it exposed him to a "serious, unnecessary risk" that could have been avoided if Driscoll had continued to make the exterior hoist available to ThyssenKrupp. *Id.* at 55.

Our standard of review when the trial court has granted a motion in limine is the evidentiary abuse of discretion standard:

> Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous."

*Parr v. Ford Motor Co.*, 109 A.3d 682, 690 (Pa. Super. 2014) (citations omitted), *appeal denied*, 2015 WL 3500130 (Pa. May 27, 2015).

In Pennsylvania, a finding of negligence requires that actual causation be accompanied by proximate causation. *See Reilly v. Tiergarten Inc.*, 633 A.2d 208, 210 (Pa. Super. 1993). Proximate causation is "a wrongful act which was a substantial factor in bringing about the plaintiff's harm." *Eckroth v. Pennsylvania Elec., Inc.*, 12 A.3d 422, 428 (Pa. Super. 2010). "Pennsylvania law has long recognized that this substantial factor need not be … the only factor." *Jones v. Montefiore Hosp.*, 431 A.2d 920, 923 (Pa. 1981). However, "[i]t is not sufficient … that a negligent act may be viewed, in retrospect, to have been one of the happenings in the series of events

- 13 -

leading up to an injury." ***Eckroth***, 12 A.3d at 427 (quoting ***Brown v. Phila. College of Osteopathic Medicine***, 760 A.2d 863, 868 (Pa. Super. 2000)). A determination of proximate cause requires the trial court to decide "whether the alleged negligence was so remote that as a matter of law, the defendant cannot be held legally responsible for the subsequent harm. ***Id.*** at 428. Put another way, the trial court must determine whether the injury would have been foreseen by an ordinary person as the natural and probable outcome of the act at issue. ***Holt v. Navarro***, 932 A.2d 915, 921 (Pa. Super. 2007).

We agree with the trial court that the lack of availability of the exterior hoists was not a proximate cause of Ulmer's injuries. The mere removal of an alternative means of accomplishing a task cannot, without more, constitute a proximate cause of any injuries sustained thereafter. While the decision to store the elevator doors in the high-rise elevator lobby was an actual ("but for") cause of Ulmer's injuries, it was not a proximate cause of those injuries, as that inquiry requires an analysis of any negligence occurring in the high-rise elevator lobby itself (e.g., the vertical nature of the storage, the Correx floor covering, etc.). The use of the high-rise elevator lobby was "one of the happenings in the series of events leading up to" Ulmer's injuries, but it was too remote as a matter of law to make Driscoll legally responsible for those injuries. Accordingly, it was within the trial

court's province to conclude that evidence or testimony relating to the exterior hoist was either not relevant or was more prejudicial than probative.

This Court's decision in *Novak v. Jeannette Dist. Memorial Hosp.*, 600 A.2d 616 (Pa. Super. 1991), illustrates the lack of proximate causation in this case. In *Novak*, a motorcyclist was killed when he was struck by a car that was exiting from the defendant hospital's facility. There had been two exits from the hospital property, one centrally located and another on the westernmost part, but the westernmost exit had been closed due to construction. *Id.* at 617. The motorcyclist's guardian contended that the westernmost driveway was a safer exit and that the defendant hospital's decision to close it at the time of the accident created a hazardous condition by requiring vehicles to use the central driveway. *Id.* This Court disagreed, concluding that no proximate cause existed because to "believe that the accident in this case would have been avoided by a second driveway, even if the visibility from such driveway would have been superior, is to subsume probability in speculation." *Id.* at 618. Instead, we indicated that the "manner in which the operators of the moving vehicles conducted themselves, rather than geography, was the effective and superseding cause of [plaintiff's] injuries." *Id.*[3]

---

[3] We reject Ulmer's insistence that *Mammoccio v. 1818 Market Partnership*, 734 A.2d 23 (Pa. Super. 1999), compels a contrary result. The *Mammoccio* case did not involve a finding of proximate cause based upon the defendant's removal of a safer alternative, but rather proximate

Similarly, in this case, Driscoll's removal of a "safer" alternative means of transporting the elevator doors was not the proximate cause of injuries sustained by Ulmer in the high-rise elevator lobby. A recovery by Ulmer must depend upon any negligence in the high-rise elevator lobby, which is for the jury on remand to decide. As such, we conclude that the trial court did not err in granting this motion in limine.

For his fifth and final issue on appeal, Ulmer claims that the trial court erred in granting Driscoll's motion in limine which precluded Ulmer's expert witness, Stephen A. Estrin ("Estrin") from testifying regarding the Correx floor covering, including its alleged movement, structural integrity, fitness for purpose, or use by Driscoll.[4] Trial Court Order, 12/27, 2012, at 1-5.

The threshold test for the admission of expert testimony is whether the proposed expert has some reasonable pretension to specialized knowledge of the subject matter at issue. *See, e.g.*, *Betz v. Pneumo Abex, LLC*, 44 A.3d 27, 52 (Pa. 2012); *Miller v. Brass Rail Tavern, Inc.*, 664 A.2d 525, 528 (Pa. 1995). If the expert satisfies this minimal

---

causation where the only alternative provided (a ladder attached too closely to a wall) was itself defective and resulted in the plaintiff's fall and injuries. *Id.* at 34-35. In the present case, Ulmer will have the burden to prove that the conditions in the alternative actually provided (the high-rise elevator lobby) were unsafe and caused his injuries.

[4] The trial court's order also prohibited Estrin from testifying about certain OSHA regulations (29 C.F.R. § 1926 et seq.), and various contractual issues in his report. Order, 12/27, 2012, at 1-5. Ulmer does not challenge these portions of the trial court's order on appeal, and because they have not been preserved for appeal we will not address them herein.

requirement, he may testify and the weight to be given to such testimony is for the trier of fact to determine. **Miller**, 664 A.2d at 528; **Commonwealth v. Gonzalez**, 546 A.2d 26, 31 (Pa. 1988). A witness may render an expert opinion based on his training and experience, **McDaniel v. Merck, Sharp & Dohme**, 533 A.2d 436, 440 (Pa. Super. 1987), *appeal denied*, 551 A.2d 215 (Pa. 1988), and formal education on the subject matter of the testimony is not required. **Reardon v. Meehan**, 227 A.2d 667, 670 (Pa. 1967).

In her Rule 1925(a) opinion, Judge Rizzo, citing to Judge Di Vito's "painstaking analysis of Estrin's expert report," deferred to Judge Di Vito's explanation for granting Driscoll's motion in limine, as set forth in his December 26, 2012 order. Trial Court Opinion, 9/5/2014, at 8. In said order, Judge Di Vito indicated that he had conducted an "exhaustive review of Mr. Estrin's report," and based upon that review had concluded that no testimony regarding Correx would be permitted because Estrin had "performed no examination of the Correx, nor performed tests of any kind on the material." Trial Court Order, 12/26/2012, at 3. Judge Di Vito further found that Estrin "offered nothing in the way of scientific support for his conclusions and opinions" and that he was relying "solely on exquisitely non-scientific information provided by others." **Id.**

While it is not necessary to decide whether Judge Di Vito in fact conducted a painstaking and/or exhaustive review of Estrin's expert report, our review of the certified record suggests that Judge Di Vito mostly adopted

the characterization of Estrin's report set forth in Driscoll's motion in limine. Therein, Driscoll argued that Estrin's opinions that the Correx had moved and lacked structural integrity were just speculation because he had taken "no measurements and conducted no scientific testing of any kind," and instead "relies wholly on the testimony of other witnesses to draw his conclusion." Motion in Limine to Preclude Testimony, 12/5/2012, at ¶¶ 27, 18. In this regard, Driscoll compared Estrin's report to that of its own expert, Dr. Robert Cargill, whose opinion "contained scientific conclusions regarding the coefficient of friction between the subject door and floor covering material." *Id.* ¶ 30. In Driscoll's supporting memorandum of law, it likewise argued that Estrin should not be allowed to offer his opinions regarding Correx because he "took no measurements and conducted no testing to determine how or why the subject floor covering allegedly moved." Memorandum of Law, 12/5/2012, at 14. Alternatively, Driscoll requested that the trial court conduct a hearing pursuant to *Frye v. U.S.*, 293 U.S. 1013 (D.C. Cir. 1923) so that it could challenge Estrin's lack of scientific methodology supporting his opinions. *Id.* at 20.

As Ulmer made clear in opposing Driscoll's motion in limine, however, Estrin's expert testimony related to industry standards rather than scientific explanations for how or why the Correx moved or slid:

> Driscoll mistakenly avers that [Estrin] must **prove** that the floor covering moved at the time of [Ulmer's] injury. Untrue. Fact witnesses will offer

> testimony concerning their personal knowledge based on what they witnessed [and] occurred at the time of the accident. [Ulmer, Donsky and Dubeck] will offer testimony that the floor covering material moved, gouged, tore or slipped. The ThyssenKrupp foreperson, [Longo], will confirm and corroborate her knowledge that the floor moved on other occasions. It is for the jury to decide based on that testimony whether or not the floor covering material moved, gouged, tore or slipped. If the jury decides that the floor covering material **did not** then the jury may disregard [Estrin's] opinion concerning the breach of industry standards in using that floor covering material for a staging area for heavy materials. If the jury finds that the floor covering material **did**, then the jury may further assess [Estrin's] expert opinions in that regard.

Plaintiff's Answer to the Motion in Limine, 12/6/2012, at 7 (emphasis in original).

Indeed, a review of Estrin's expert report reflects that he does not offer any scientific opinion or other explanation for how or why the Correx moved or slid.[5] At trial, Estrin testified that he has expertise in construction industry safety standards as a result of his 54 years as a union carpenter, foreman, superintendent, general contractor/construction manager, certified safety manager, and a provider of construction forensic services. N.T., 1/16/2013, at 13-19. In his report, he stated that "nonstructural floor coverings" are a known and identifiable safety risk, and that Driscoll should have, as part of its obligation to provide a safe work environment, employed

---

[5]   The report contains a section entitled "Cause (how and why) of the accident," but it does not contain any scientific explanations and instead only reviews the deposition testimony of the ThyssenKrupp employees.

construction accident prevention measures (elimination, prevention, and control) in connection with said floor coverings. Motion in Limine to Preclude Testimony, 12/5/2012, Exhibit B. According to Estrin, Driscoll violated construction industry standards by, inter alia, creating three unsafe conditions at the worksite:

> The first unsafe condition that existed at the Comcast Center between October 18-25, 2007 was to be found on the loading dock, in which the exterior hoist could not be utilized by "Thyssenkrupp" employees to move the crates containing the elevator doors to the upper floors were [sic] were needed, necessitating that they be moved to the high-rise elevator lobby, at "Driscoll's" direction.

> The second unsafe condition at the Comcast Center on October 25, 2007 was found to exist in the high-rise elevator lobby, the protective floor covering, Correx, lacking structural integrity to support "Thyssenkrupp" employees and the elevator doors during movement to drywall cart(s) safely by virtue of it not being the specified Correx or its equal.

> The third unsafe condition that existed was that the perimeter edges of sheets were not taped, permitting the sheets to slide, move, when the elevator doors were being manually transferred to the drywall cart.

*Id.*

Testimony regarding the first unsafe condition would violate the trial court's grant of the motion in limine relating to alternative means of transporting the elevator doors, which in response to Ulmer's fourth issue on appeal we determine was not entered in error. The trial court had no basis,

however, to exercise its discretion to prohibit Estrin from testifying regarding the second and third unsafe conditions. On remand, Estrin should be permitted to offer his opinions, to the extent consistent with his expert report and based upon his construction industry experience and knowledge, as to whether Driscoll breached industry standards relating to the use of Correx in the high-rise elevator lobby as a staging area for the storage and transport of elevator doors. Estrin clearly satisfies the minimal requirement of possessing a "reasonable pretension to specialized knowledge of the subject matter at issue," and his expert report is sufficiently detailed to provide an understanding of the nature of his possible testimony and the reasons for his opinions. Driscoll's contentions regarding Estrin's apparent lack of measurements, inspections, or testing of Correx in connection with his opinions goes to the weight the jury should place on his testimony, but do not constitute grounds for prohibiting its introduction.

For these reasons, we reverse and remand for a new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/17/2015

- 21 -